**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DAVID WHITT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18-cv-1294 |
| | ) |
| CITY OF ST. LOUIS, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

COMES NOW Plaintiff David Whitt, by and through undersigned counsel, and in response and opposition to Defendant City of St. Louis's (City) Motion for Protective Order states as follows:

INTRODUCTION

This is not a complicated case. Plaintiff David Whitt was arrested for exercising his indubitable right to record police activity in public and without probable cause. Because of that, Mr. Whitt suffered harm, and he sought redress from this Court. Mr. Whitt's claims include claims against individual officers who illegally arrested him and against the City through municipal liability under *Monell*. While the video Mr. Whitt captured immediately before and during his arrest is available, *Monell* liability rests on a plaintiff's ability to show that the deprivation(s) of rights complained of "may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694. And while the video shows the bad acts of the individual officers who are defendants here, it cannot, by itself, prove the City has a policy, practice, or custom of arresting and charging individuals for recording the police or violating citizens' First-Amendment rights more generally. Consequently, Mr. Whitt has sought to discover relevant information for his *Monell* claim through other means. One method is

1

deposing the City, through its representatives, regarding specific topics, which Mr. Whitt has provided to the City.[1] The topics at issue here are all designed to discover information relevant to Mr. Whitt's *Monell* claims by deposing the City under Rule 30(b)(6) and would gather information that cannot be gleaned from the video itself.

## LEGAL STANDARD

Generally, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party …." Rule 26(b)(1). The Federal Rules provide explicit limitations to discovery, however. Namely, a court must limit discovery if it finds that

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Rule 26(b)(2). A court *may* enter an order protecting "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c). Additionally, Rule 30(b)(6) requires that the topics be stated with reasonable particularity. The City has sought to limit Mr. Whitt's discovery regarding particular topics on a wide variety of grounds. The City does not argue that any of Mr. Whitt's topics concern evidence that is privileged or irrelevant.

## ARGUMENT

None of the elements under Rule 26 exist here, so Mr. Whitt should be permitted to depose the City on the disputed topics. Each of the topics is one from which relevant evidence may reasonably be expected to be discovered. None are oppressive or overly burdensome on the

---

[1] Plaintiff's 30(b)(6) Notice of Deposition is attached here as EXHIBIT A.

City. All seek information that bears on the City's policy and practice of violating First-Amendment rights, which is directly relevant to Mr. Whitt's *Monell* claim. None of it is duplicative of evidence available in the video (or elsewhere).

Topic 6

Reasons the City argues that Topic 6 is improper include: it is vague and ambiguous, Doc. 83 at 3; it is insufficiently definite, *id.*; it would require the City to speculate about hypothetical circumstances in which a person would be arrested while engaged in First Amendment activity, *id.*; it is argumentative, *id.*; the representative would have to be prepared to testify regarding a long list of the City's own policies, *id.* at 4; it lacks reasonable particularity, *id.*; it would be nearly impossible for the City to prepare a representative to testify regarding it, *id.*; and it does not put the designee on sufficient notice regarding what testimony will be necessary, *id.* at 5. None of these apply to Topic 6.

Topic 6 calls for testimony regarding "City and [St. Louis Metropolitan Police Department (SLMPD)] policies, procedures, special orders, customs and directives regarding the arrest of persons engaged in First Amendment activity." Exhibit A at Topic 6. Contrary to the City's interpretation, Topic 6 neither argues nor implies that SLMPD arrests people *for* engaging in First Amendment activity. The City does, however, arrest persons as they are engaged in conduct that is protected under the First Amendment, and it is testimony regarding the policies that govern such arrests that is the subject of Topic 6.

The City seems to narrow its objections to Topic 6 by arguing Topic 6 fails to meet Rule 30(b)(6)'s requirement that the notice must "describe with reasonable particularity the matters for examination." Rule 30(b)(6). However, the case the City cites for this proposition is inapposite. In *Catholic Mut. Relief Soc'y of Am. v. Arrowood Indem. Co.*, 2019 U.S. Dist. WL

3

4897159 (D. Minn. Jan. 9, 2019), the district court found that six topics did not satisfy the reasonable particularity burden. The topics in question concerned insurance policies issued to Catholic organizations over the course of some 70 years, "without geographical limit." *Id.* at *3. Because this would apply to the details of innumerable policies issued over seven decades in 50 U.S. states, the court found that it would be "impossible for [the responding party] to designate and fully prepare a corporate representative with knowledge regarding the topics as noticed." *Id*.

Here, Mr. Whitt does not seek any historical data from the City, so his request is limited to current policies and procedures. Additionally, Mr. Whitt's request does not concern innumerable policies issued across the United States. It concerns current policies promulgated and allegedly followed by the City itself. It is not unreasonable for Mr. Whitt to expect that someone from the City be able to testify regarding its own policies. Consequently, this Court should not issue a protective order preventing Mr. Whitt from discovering this relevant information.

Topic 9

The City argues that the Court should enter a protective order regarding Topic 9 because the topic is vague, ambiguous, duplicative, and burdensome. Doc. 83 at 5. But Topic 9 is none of these things.

Topic 9 concerns "any training or educational materials provided to or generated by SLMPD since January 1, 2016 related to the City's interfering with a police officer ordinance." Exhibit A at Topic 9. The City asserts that "Topic 9 is vague and ambiguous as it does not identify what training or educational materials are at issue." Doc. 83 at 5. This response contrasts with the City's response to similar requests for production of documents.[2] There, the City

---

[2] The City's Third Supplemental Responses to Plaintiff's First Set of Requests for Production to Defendant City of St. Louis is attached here as EXHIBIT B.

4

responded to two similarly worded requests without objection. The City produced Special Order 1-06 in response to the following requests: "Any training or educational materials provided to or generated by SLMPD over the past five years relating to responding to individuals who are filming or photographing police activity;" and "Any training or educational materials provided to or generated by SLMPD over the past five years relating to SLMPD's internal Special Order No. SO 1-06." *See* Exhibit B at ¶s 12-13. And while it did not produce any documents with regard to it, the City likewise did not object to a request for training materials related to an injunctive order issued in a different case with similar issues. *See* Exhibit B at ¶ 14.

While the City does not cite any authority or precedent for its argument regarding Topic 9, its bare assertion is wrong on its face. Topic 9 clearly identifies the training or educational materials with which it is concerned: those created by or provided to SLMPD that relate to the interfering ordinance and that were created or provided after January 1, 2016. To the extent the City is arguing that the topic is not denoted with reasonable particularity and is therefore like the topics in *Catholic Mutual*, this topic's limitations make it unlike those.

Here, the topic is limited to approximately four years. It is further geographically limited because it concerns only SLMPD's materials, and not the materials of police departments throughout the entire country or even the State of Missouri. Therefore, unlike the topics in *Catholic Mutual*, this topic is stated with sufficient particularity that the City can be expected to be able to prepare a representative to testify regarding the relevant materials.

The City also argues that Topic 9 is duplicative because it is the same as Topic 7 in Mr. Whitt's notice. Doc. 83 at 5. But Topic 7 and Topic 9 seek testimony on distinct topics and are therefore not duplicative. Topic 9 concerns training materials that have to do with the City's interfering ordinance. Exhibit A at Topic 9. Topic 7 requests testimony on "policies and

5

procedures relating to the enforcement of the City's interfering with a police officer ordinance." Doc. 83 at 5 (citing Exhibit A at Topic 7). Because training materials and policies and procedures are different, the two topics are not duplicative. This Court should not issue a protective order relieving the City of its duty to produce a representative competent to testify on Topic 9.

Topic 10

The City alleges Topic 10 is vague, ambiguous, duplicative, and burdensome. Doc. 83 at 5. These arguments do not fit Topic 10 any better than they fit Topic 9.

Topic 10 requests testimony concerning "City and SLMPD policies and procedures relating to the filming of officers by citizens, including but not limited to Special Order 1-06." Exhibit A at Topic 10. (Special Order 1-06 is SLMPD's special order regarding recording of police activity.) The City points to the fact that other topics, for which the City has produced representatives, also concern Special Order 1-06 and efforts by the City to ensure that the City's employees do not infringe on the rights of citizens to film police activity. The topic, therefore, "is vague and ambiguous as to what additional information is being sought, and is duplicative and burdensome as to testimony already acquired," according to the City. Doc. 83 at 6.

The City points to four topics on which it has produced a representative to argue that Topic 10 is duplicative. It also seems to argue that Topic 10 is vague and ambiguous because it is similar to other topics. The relevant topics to the City's analysis are Topics 12, 13, 17, and 18.

Topic 12 is "[a]ny efforts undertaken by the City to ensure its employees and agents do not infringe upon the rights of citizens to safely film police officers performing their duties." Exhibit A at Topic 12. Topic 13 is the same, except it concerns efforts undertaken by SLMPD. *See Id.* at Topic 13. It is true that all three topics concern the filming of officers, the subject

6

matter of this lawsuit. However, where Topics 12 and 13 call for testimony regarding efforts the City and SLMPD have undertaken in that area, Topic 10 calls for testimony concerning policies and procedures. These are not equivalent. One calls for testimony on the *content of relevant policies*. The other calls for testimony describing *actual efforts taken*. This distinction demonstrates that Topic 10 is not duplicative of Topics 12 and 13.

Topic 17 calls for testimony regarding "[a]ny efforts taken by the City to ensure its employees and agents comply with Special Order No. SO 1-06." Exhibit A at Topic 17. Topic 18 is identical, except that it concerns SLMPD instead of the City. Again, Topic 10 calls for testimony on the contents of relevant policies. Topics 17 and 18 call for testimony regarding concrete efforts undertaken to ensure compliance with those policies.

Topic 10 is particular. It is not duplicative. It is relevant and not privileged. The Court should not enter a protective order shielding the City from its discovery obligations.

Topic 14

The City argues that "Topic 14 is duplicative and burdensome in that the City has already produced designees to provide testimony responsive to the topic." Doc. 83 at 6. But Topic 14 calls for specific testimony not covered by any of Mr. Whitt's other topics. Topic 14 calls for testimony regarding "any and all policies produced in response to Mr. Whitt's First Request for Production." Exhibit A at Topic 14. The City notes that it provided two policies in response to the referenced Request: Special Order 1-06 and Special Order 6-02. Doc. 83 at 6. It notes that the City has produced designees to testify regarding Special Order 1-06. *Id.* Therefore, "[i]t is unclear what additional information Topic 14 is seeking." *Id.* But the City has already specifically pointed to additional information requested by Topic 14: Special Order 6-02. Testimony regarding two distinct special orders cannot be duplicative. To the extent that

7

testimony regarding Special Order 1-06 would be duplicative, Mr. Whitt is willing to narrow this topic to only include Special Order 6-02.

The City concedes that Topic 14 includes Special Order 6-02, on which it has not provided testimony, but then changes its tack to argue that, because "[i]t is equally unclear what specific information Plaintiff seeks in regard to Special Order 6-02," the topic is vague and ambiguous. *Id.* But this request is different in kind from the requests at issue in *Catholic Mutual*, which spanned multiple decades and dozens of states. There, the responsive insurance policies were innumerable. Here, the responsive polices are eminently numerable: there are two of them. Topic 14 is neither duplicative nor insufficiently particular, and this Court should not enter a protective order shielding the City from providing testimony regarding it.

Topic 15

The City argues that "Topic 15 is vague and ambiguous as it is entirely unclear what information Plaintiff seeks from the topic." Doc. 83 at 6. But it neither cites any authority for this determination nor advances an actual argument that would demonstrate Topic 15's ambiguity. Instead, the City immediately goes on to specifically identify responsive information, but argues that this information is equally available to Mr. Whitt on the City's website. *Id.*

Topic 15 asks for testimony regarding "SLMPD's structure and operational relationship with City (from January 1, 2016 to present)." Exhibit A at Topic 15. Unlike the nationwide and temporally unlimited requests in *Catholic Mutual*, Topic 15 is focused solely on the relationship between the City and SLMPD over the past four years. The City implicitly admits that it can deduce what information may be responsive to the topic when it identifies the fact that "SLMPD is a Division under the City's Department of Public Safety." Doc. 83 at 6. The City points to the public availability of that fact to argue that Topic 15 requests information that is already equally

available to Mr. Whitt. But both of the City's contentions cannot be simultaneously true. Either "it is indiscernible what information is being sought from Topic 15," *Id.* at 6-7, or the responsive information is so obvious and widely available that it is equally available to Mr. Whitt. And even if all information responsive to Topic 15 was available on the City's website, facts attested to under oath are very different from information lifted from the City's website. Ultimately, neither of the City's contradictory arguments regarding Topic 15 demonstrates that the topic is inappropriate in any way. Consequently, this Court should not issue a protective order concerning Topic 15.

Topic 19

The City provides three reasons it should not be required to produce a designee to testify on Topic 19. First, the topic is unduly burdensome and oppressive. Second, it is argumentative. Third, it is outside the scope of Mr. Whitt's claims.

To support its claim that Topic 19 is burdensome and oppressive, the City argues that "such data and statistics are not maintained by SLMPD" and that therefore preparing to testify on this topic would require reviewing over 400 incident reports for relevancy. Doc. 83 at 7. The designee would also have to "run [suspect names from relevant cases] through a separate system to determine the outcome of said charges." *Id.* at 7-8. This would take approximately six weeks. *Id.* The City claims that this is an excessive burden, but weighed against Mr. Whitt's interest in discovering evidence relevant to his *Monell* claim, the burden is proportional.

In determining the proportionality of a discovery request, the court must consider the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

9

likely benefit." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting *Carr v. State Farm Mutual Auto. Ins. Co.*, 312 F.3d 459, 468 (N.D. Tex. 2015)). Weighing those factors shows that Mr. Whitt's request is proportional.

Here, given that Mr. Whitt's claims involve his constitutional rights, the importance of the issues at stake here weighs in favor of allowing discovery. Additionally, Mr. Whitt must show, as an element of his *Monell* claim, that the City has a policy, practice, or custom of unconstitutionally and illegally arresting individuals for recording police activity under its interfering ordinance. Evidence concerning the number of individuals who were so arrested is vital to proving this claim. Without knowing this figure, Mr. Whitt would have greatly increased difficulty in proving at what rate such arrests occur. The City would not need to track down any information it does not have access to nor would it incur any expense beyond its human resource cost. Because the information is vital to one of Mr. Whitt's core claims, its value outweighs the burden gathering it would place on the City.

Preparing for a 30(b)(6) deposition "may indeed 'be an onerous task.'" *List v. Carwell*, 2020 WL 5988514 (D. Minn October 9, 2020) at *15 (citing *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc*., 21 F.R.D. 534, 540 (D. Nevada 2008)). But this burden does not make the requesting party's topics unreasonable. After all, under Rule 30(b)(6), when a party directs a Notice of Deposition to a corporation under Rule 30(b)(6), "the corporation '*must* then designate one or more officers, directors, or managing agents, or designate *other persons who consent to testify on its behalf*.'" *List*, 2020 WL 598814 at *13 (citing Rule 30(b)(6)) (emphasis in original). "The persons designated must testify about information known or reasonably available to the organization." Rule 30(b)(6). "When 'no current employee has sufficient knowledge to provide the requested information, the party is obligated to prepare one or more witnesses so that they

10

may give complete, knowledgeable and binding answers on behalf of the corporation.'" *List*, 2020 WL 598814 at *14 (quoting *CMI Roadbuilding, Inc. v. Ia. Parts, Inc.*, 322 F.R.D. 350, 360-61 (N.D. Iowa, September 21, 2017)). In *List*, the court held that a corporate party was required to produce a designee for a 30(b)(6) deposition even though the person from the corporation most able to answer those questions had died.

  Here, the City does not dispute that it could prepare and provide a designee. Indeed it describes exactly how it could produce a qualified designee: have that person review some 400 cases to determine which are responsive to the topic. *See* Doc. 83 at 7. The City simply desires not to bear the burden of preparing a designee. Topic 19 calls for the City to produce someone to testify as to:

> data or statistics maintained by SLMPD or the City relating to or reflecting, over the last six years: (a) the number of individuals arrested for taking video of police officers and charged with violation of 15.10.010 of the St. Louis City Municipal Ordinance Code and (b) the outcome of those charges.

Exhibit A at Topic 19. The topic is limited to six years and requests testimony only regarding a small subset of arrests – those that *both* involve a person recording police activity *and* were made under the relevant ordinance. While the number of arrests that may meet these criteria is not tiny, nor is it impossibly large. The topic is not such that it is impossible to prepare for. The information is reasonably available to the City. And Mr. Whitt reasonably expects that information on these particular arrests will lead to the discovery of admissible evidence proving his *Monell* claim. None of the conditions that would make a protective order appropriate exist here, so this Court should not enter one with regard to Topic 19.

  The City rests its contention that Topic 19 is argumentative on the topic's alleged implication "that City officers arrest individuals merely for filming them." Doc. 83 at 7.

11

Even assuming that a protective order is the appropriate remedy for an argumentative topic, which the City has failed to provide any authority to support, the Topic is not argumentative. It merely describes circumstances under which City officers have presumably arrested someone in the past six years and expects that the City will produce a designee to testify about those arrests. Evidence of arrests by SLMPD of people exercising their right to record police is directly relevant to Mr. Whitt's *Monell* claim.

Third, the City argues that Topic 19 goes beyond the scope of Mr. Whitt's claims. The City argues that the topic is *per se* outside of the scope of Mr. Whitt's claims because it requests information about arrests that occurred after his own arrest. Doc. 83 at 8. But precedent does not support this argument.

Mr. Whitt does not dispute that proving his *Monell* claim will require him to show that there was a *prior* pattern of unconstitutional conduct. However, the City errs when it cites this fact to support its conclusion that evidence from after Mr. Whitt's arrest is outside of the scope of his claims. In fact, multiple circuit courts have held that evidence from after a plaintiff suffered their own harm is relevant to *Monell* liability. Just because evidence from prior to his arrest is required to prove his claim does not mean that evidence from after the fact is irrelevant.

The Fifth Circuit based its holding on analogous rules in other contexts: "As subsequent conduct may prove discriminatory motive in a prior employment decision and subsequent acts may tend to prove the nature of a prior conspiracy, so the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy." *Grandstaff v. City of Borger, Tx.*, 767 F.2d 161, 171 (5th Cir. 1985). Discussing *Grandstaff*, the Ninth Circuit held that evidence of a police chief's

12

subsequent actions (or inaction) could be used at the summary judgment stage to show the existence of a municipal custom or policy. *Henry v. Cnty. of Shasta*, 132 F.3d 512, 520 (9th Cir. 1997). Indeed, in *Henry*, the Ninth Circuit reaffirmed its "rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry." Id. At 519. The *Henry* court points to other circuit courts that have held similarly, namely the First, Third, and Seventh Circuits, *id.*. at 519 n.12, and does not cite to any contrary authority.

District courts in the Eighth Circuit have so far not followed this line of cases. They have distinguished their cases from *Grandstaff* in multiple ways. *See*, *e.g.*, *Harris v. Daviess-Dekalb Cty. Reg'l Jail*, No. 14-6069-CV-SJ-ODS, 2016 WL 3645201, *7 (W.D.Mo. June 30, 2016). *Harris* was brought by an incarcerated person's family after that person was allowed to develop a fatal lung infection due to inattention to his condition by jail personnel. *See id.* at *1. There, the court noted that the relevant defendant in *Grandstaff* was the city itself, not an individual supervisor, as in *Harris*. *Id*. at *7. The court also implied that the alleged post-event conduct in *Grandstaff* was more severe than that of the defendant in its case, a single doctor: "Moreover, the [*Grandstaff*] Court examined the City's failure to reprimand or discharge police officers '[f]ollowing this incompetent and catastrophic performance,' 'use of deadly force,' and 'dangerous recklessness of that police force.'" *Id*. (quoting *Grandstaff*, 767 F.2d at 171-72). But the court did not explicitly compare the facts in its case to the facts in *Grandstaff*. The *Harris* court also described an earlier holding from the Eastern District of Missouri that declined to allow a plaintiff to use post-event evidence to show municipal liability. There,

13

according to the *Harris* court, the court also distinguished the facts in *Grandstaff* from the facts in the case before it, which dealt with municipal liability on a theory of inadequate training of the police force. *Harris*, 2016 WL 3645201 at *8 (citing *Jenkins et al. v. St. Louis Cnty.,* No. 4:10CV827SNLJ, 2011 WL 5868310 (E.D. Mo. Nov. 22, 2011)). The court also found that the *Jenkins* plaintiffs had "failed to offer any legal authority within the Eighth Circuit establishing St. Louis County's alleged inaction following an event 'demonstrates prior notice by the County that its training program was constitutionally deficient.'" *Id*. at 8 (quoting *Jenkins*, No. 4:10CV827SNLJ at *12). While the *Harris* court does not recount the specific facts of the *Jenkins* case, it does quote the *Grandstaff* court pointing to, e.g., "this incompetent and catastrophic performance." *Harris*, 2016 WL 3645201 at *7 (quoting *Grandstaff*, 767 F.2d at 171-72). And while the court never makes the argument explicitly, the reasonable conclusion to be drawn from the language the court picked out of the *Grandstaff* opinion is that the court does not believe the facts in its case measure up to that standard. Similarly, the *Harris* court quotes the *Jenkins* court opining that *Grandstaff* "'is extremely limited in scope to its facts, and its legal conclusions inapplicable to the current situation.'" *Id*. at *8 (quoting Jenkins, No. 4:10CV827SNLJ at *12). So precedent demonstrates that evidence from after the harm at issue in a *Monell* claim is not automatically irrelevant. But the facts of the case must be like those in *Grandstaff* and *Henry*.

In *Henry* it was a police chief's actions subsequent to the complained-of incident that the court said were "highly probative" with regard to proving a municipal policy or custom. *Henry*, 132 F.3d at 520. In *Grandstaff*, the court found that evidence of inaction by the department itself in the wake of a deadly shooting was relevant. *See Grandstaff*,

14

767 F. 2d at 171. The evidence in *Harris* concerned the actions of only a single doctor, not a department or someone who has authority to act on behalf of the department.

Here, it is the subsequent actions of the entire SLMPD that are at issue. Topic 19 concerns incidents in which City officers have subsequently taken actions against others, just like those they took against Mr. Whitt. That evidence is probative with regard to whether SLMPD had or has a policy, custom, or practice of arresting individuals for exercising their First Amendment rights. This Court should not grant a protective order regarding Topic 19 because all of the evidence it seeks, from before and after Mr. Whitt's arrest, is relevant.

Topic 20

The City contends that Topic 20 is duplicative of testimony already adduced in the depositions of some of its 30(b)(6) designees. Topic 20 calls for testimony concerning "[t]he factual basis for the City's denial of allegations" in a handful of specific paragraphs in Mr. Whitt's complaint. Exhibit A at Topic 20. The City compares some testimony from earlier depositions in this case to the paragraphs at issue in this topic. It points to various facts that have been testified to in depositions that may contradict Mr. Whitt's allegations. But presumably, at the time it denied the allegations, the City had a factual basis for doing so. Those facts are sought by Topic 20. These may or may not be the same facts that have come out in discovery so far, but Mr. Whitt is reasonable in expecting that the City provide any factual basis for its denial of the accuracy of his allegations and doing so directly. These facts are relevant insofar as they go directly to the core issues of the case, namely whether Mr. Whitt's allegations are true. This Court should not issue a protective order regarding Topic 20, and the City should produce a designee to testify regarding it.

Respectfully submitted,
RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER

By: */s/ W. Patrick Mobley*
Amy E. Breihan, #65499MO
Megan G. Crane, #71624MO
W. Patrick Mobley, #63636MO
3115 South Grand Blvd., Suite 300
St. Louis, MO 63118
Phone: (314) 254-8540
Fax: (314) 254-8547
amy.breihan@macarthurjustice.org
megan.crane@macarthurjustice.org
pat.mobley@macarthurjustice.org

Dated: November 4, 2020

16

## **CERTIFICATE OF SERVICE**

I certify that on this 4th day of November, 2020, I filed a copy of the foregoing using the court's CMF/ECF system, which will provide service of the same on all counsel of record.

By: */s/ W. Patrick Mobley* #63636MO