**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID WHITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-1294 RLW |
| | ) | |
| CITY OF ST. LOUIS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Defendant City of St. Louis's ("City") Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) (ECF No. 82). The City seeks a protective order limiting Plaintiff's Rule 30(b)(6) deposition topics pursuant to Rule 26(c)(1)(D). Plaintiff David Whitt ("Plaintiff") opposes the Motion and it is fully briefed. After careful consideration of the motion papers, the Court will deny the City's Motion for Protective Order.

**Background**

Plaintiff David Whitt is a member of Cop Watch, a network of community-based groups of individuals who purport to monitor and document police activity. Plaintiff alleges he is a well-known member of Cop Watch in the St. Louis area and frequently records video of police activity on a camcorder.

In August 2016, Plaintiff was riding his bicycle in the City of St. Louis when he observed five police vehicles, multiple police officers from the St. Louis Metropolitan Police Department ("SLMPD"), and one individual in custody in a police cruiser. Plaintiff was recording video on his camcorder and asserts he maintained a reasonable distance away from the police officers and the man in custody. Plaintiff alleges the following events transpired:

a. Defendant Linhorst drove a police cruiser toward Whitt, placing the vehicle between Whitt and the other police vehicles, pushing Whitt onto the sidewalk. At the same time, Linhorst instructed Whitt to back up. Whitt complied.

b. Defendant Karnowski instructed Whitt to back up again. Again, Whitt complied, coming to a stop approximately 50 feet away from the police cruiser in which the individual was detained.

c. Whitt then stated that he could see the individual detained in backseat of a police vehicle, at which point Defendant Karnowski looked off camera and remarked, "Yeah." Defendants Karnowski, Linhorst, and Shaw then moved forward to arrest Whitt.

(ECF No. 38 at 6, ¶ 25.)

According to Plaintiff, video of the encounter was recorded on his camcorder. Plaintiff was taken into custody, booked, and detained for ten hours. He was released on a $50 bond and issued a property receipt for his camcorder and bicycle. Linhorst, with assistance of Baine, executed an affidavit in support of a warrant application to search the contents of camcorder, which was issued. Plaintiff did not receive his camcorder back until January 2017. He alleges the camcorder was damaged and police had attempted to erase all video recordings from the memory card.

In October 2016, Plaintiff was charged with violating Section 15.10.010 of the St. Louis City Municipal Ordinance Code, which makes it a misdemeanor to, among other things, "hinder, obstruct, resist or otherwise interfere with any City officer in the discharge of his official duties." The City of St. Louis dropped the charge against Plaintiff by *nolle prosequi* in May 2017. Plaintiff brought this lawsuit against the City of St. Louis, SLMPD officers Linhorst, Karnowski, Shaw, and Baine (collectively referred to as "SLMPD Defendants"), and three unidentified police officers ("Doe Defendants") who assisted in his August 2016 arrest.

The First Amended Complaint (ECF No. 38) asserts the following counts pursuant to 42 U.S.C. § 1983: Unlawful Seizure/False Arrest against Defendants Linhorst, Karnowski, Shaw,

and Doe Defendants (Count I); Malicious Prosecution against SLMPD Defendants (Count II);

Retaliation for Exercise of First Amendment Rights in Violation of First and Fourteenth

Amendments to the United States Constitution against Defendants Linhorst, Karnowski, Shaw,

and Does (Count III); Unlawful Search against Defendants Linhorst and Baine (Count IV); and a

claim for municipal liability pursuant to Monell v. Department of Social Services, 436 U.S. 658,

685 (1978), for violations of the First, Fourth, and Fourteenth Amendments against the City of

St. Louis (Count V). Plaintiff also bring the following claims pursuant to the Missouri

Constitution: False Arrest against Defendants Linhorst, Karnowski, Shaw, and Doe Defendants

(Count VI); and Malicious Prosecution against SLMPD Defendants (Count VII).[1]

## **Legal Standards**

### A. Scope of Discovery

The scope of discovery for actions filed in federal court is set forth in Federal Rule of

Civil Procedure 26:

> *Scope in General.* Unless otherwise limited by court order, the
> scope of discovery is as follows: Parties may obtain discovery
> regarding any nonprivileged matter that is relevant to any party's
> claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the discovery
> in resolving the issues, and whether the burden or expense of the
> proposed discovery outweighs its likely benefit. Information
> within this scope of discovery need not be admissible in evidence
> to be discoverable.

Rule 26(b)(1), Fed. R. Civ. P.

"The scope of discovery under Rule 26(b) is extremely broad." Gowan v. Mid Century

Ins. Co., 309 F.R.D. 503, 508 (D.S.D. 2015) (citing 8 Charles A. Wright & Arthur R. Miller,

---

[1]The Court granted Defendants Linhorst and Baine's Motion to Dismiss Count VIII, which asserted claim for Unlawful Search in Violation of Article I, Section 15 of the Missouri Constitution against these Defendants. See Mem. and Order of Aug. 14, 2019 (ECF No. 53).

Federal Practice & Procedure § 2007, 3637 (1970)). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." Hickman v. Taylor, 329 U.S. 495, 507 (1947). Relevancy in this context "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Jo Ann Howard & Assocs., P.C. v. Cassity, 303 F.R.D. 539, 542 (E.D. Mo. 2014) (citation and quotation omitted).

After the proponent of discovery makes a threshold showing of relevance, the party opposing it has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993), and St. Paul Reins. Co. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000)). The opposing party must demonstrate "that the requested documents either do not come within the broad scope of relevance defined pursuant to Rule 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Id. (quoted case omitted). "Rule 26 requires 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" Vallejo v. Amgen, Inc., 903 F.3d 733, 743 (8th Cir. 2018) (quoting Gen. Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir. 1973)).

Rule 26(b)(1) was amended in 2015 to include a "proportionality" requirement for the parties and the court to consider in resolving discovery disputes. Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment. The amendment does not "alter the basic tenet that Rule 26 is to be liberally construed to permit broad discovery." Prime Aid Pharmacy Corp. v. Express

4

Scripts, Inc., 2017 WL 67526, at *4 (E.D. Mo. Jan. 6, 2017) (quoted case and internal citation omitted). Also, "[T]he existing allocation of burdens to show undue burden or lack of proportionality have not fundamentally changed." Vallejo, 903 F.3d at 742 (quoted case omitted). "A party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required." Id. (quoted case omitted).

    B. Protective Order Standard

    A party may move for a protective order pertaining to discovery requests in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). "Because of liberal discovery and the potential for abuse, the federal rules 'confer[ ] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.'" Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2, 197 F.3d 922, 925 (8th Cir. 1999) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 30, 36 (1984)). "The party moving for the protective order has the burden to demonstrate good cause for issuance of the order." Buehrle v. City of O'Fallon, Mo., 2011 WL 529922, at *2 (E.D. Mo. Feb. 8, 2011) (citation omitted). To show good cause, "the parties seeking protection must show that specific prejudice or harm will result if no protective order is granted." Id. (citation omitted). The prejudice or harm Rule 26(c) will protect against includes "annoyance, embarrassment, oppression, or undue burden or expense." See Fed. R. Civ. P. 26(c); Crawford-El v. Britton, 523 U.S. 574, 599 (1998). Stereotypical and conclusory statements are insufficient to establish good cause under Rule 26(c). Misc. Docket Matter No. 1, 197 F.3d at 926. "Rule 26(c) confers broad discretion on the trial court to decide when a

protective order is appropriate and what degree of protection is required." <u>Seattle Times</u>, 467

U.S. at 36; <u>Roberts v. Shawnee Mission Ford, Inc.</u>, 352 F.3d 358, 362 (8th Cir. 2003).

    C. <u>Rule 30(b)(6) Deposition Standards</u>

"Proper preparedness for a Rule 30(b)(6) deposition requires the good faith of both

parties:

> "[T]he requesting party must reasonably particularize the subjects about which it wishes to inquire." <u>Dwelly v. Yamaha Motor Corp.</u>, 214 F.R.D. 537, 540 (D. Minn. 2003); <u>see</u> <u>also</u> Fed. R. Civ. P. 30(b)(6) (the notice must describe the matters for examination with "reasonable particularity"). A deposing party may not demand that a corporate designee be prepared to speak with encyclopedic authority. <u>See</u> <u>generally</u> <u>Murphy v. Kmart Corp.</u>, 255 F.R.D. 497, 506 (D.S.D. 2009). In return, "the responding party must make a conscientious, good-faith effort to designate knowledgeable persons . . . and to prepare them to fully and unevasively answer questions about the designated subject matter." <u>Dwelly</u>, 214 F.R.D. at 540 (citations and internal quotation marks omitted).

<u>CMI Roadbuilding, Inc. v. Iowa Parts, Inc.</u>, 322 F.R.D. 350, 360–61 (N.D. Iowa 2017).

"The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the

corporation, not of the individual deponents." <u>List v. Carwell</u>, 2020 WL 5988514, at *13 (D

Minn. Oct. 9, 2020) (quoting <u>United States v. Taylor</u>, 166 F.R.D. 356, 361 (M.D. N.C. 1996));

<u>see</u> Fed. R. Civ. P. 30(b)(6) (designee "must testify about information known or reasonably

available to the organization"). "If the persons designated by the corporation do not possess

personal knowledge of the matters set out in the deposition notice, the corporation is obligated to

prepare the designees so that they may give knowledgeable and binding answers for the

corporation." <u>List</u>, 2020 WL 5988514, at *13 (quoted case omitted). "This obligation requires

the designee to testify about information known or reasonably available to the organization" and

it "can include information held by third-party sources if that information is reasonably available

to the organization." <u>Id.</u> (quoted case omitted). "Rule 30(b)(6) expressly applies to a

government agency and provides neither an exemption from Rule 30(b)(6) nor 'special consideration concerning the scope of discovery[.]'" <u>S.E.C. v. Kramer</u>, 778 F.Supp.2d 1320, 1327 (M.D. Fla. 2011).

**Discussion**

As a threshold matter, the City asserts that because Plaintiff captured much of the incident at issue in this case on film, his Rule 30(b)(6) deposition notice "require[s] the City to designate individuals to provide duplicative, unnecessary testimony describing events that are already well documented in the video recording." (ECF No. 83 at 2.) This assertion is meritless. Plaintiff asserts a <u>Monell</u> municipal liability claim against the City in Count V. While Plaintiff's video may show the individual police officer Defendants' acts, it cannot establish municipal liability based on a policy, practice, or custom of arresting persons for recording police activity, or for violating citizens' First Amendment rights more generally. <u>See, e.g.</u>, <u>Mick v. Raines</u>, 883 F.3d 1075, 1089 (8th Cir. 2018) (for § 1983 liability to attach to a governmental entity, a plaintiff must show the constitutional violation resulted from an official policy, an unofficial custom, or a deliberately indifferent failure to train or supervise).

The Court now turns to the City's specific objections to Plaintiff's Rule 30(b)(6) deposition notice. The City seeks a protective order limiting the scope of Plaintiff's Rule 30(b)(6) deposition with respect to seven topics.

A. <u>Topic 6:</u> "City and SLMPD policies, procedures, special orders, customs and directives regarding the arrest of persons engaged in First Amendment activity."

The City asserts Topic 6 is "vague and ambiguous because the mere act of participating in First Amendment-protected activity does not provide probable cause for an officer to make an arrest," and thus the topic requires the City "to speculate about the myriad circumstances and scenarios in which an individual who is engaged in a First Amendment-protected activity could

also commit an offense leading to his or her arrest." (ECF No. 83 at 3.) The City also asserts the topic is argumentative to the extent it suggests the City arrests individuals because they are engaging in First Amendment-protected activity. The City states it has produced two designees to testify regarding Police Department Special Order 1-06, which is the Department's policy concerning citizens' right to observe and video record police officers in the course of their duties, but states it does not have a policy regarding the arrest of persons "engaged in First Amendment activity" because police officers are not permitted to nor do they arrest people merely for exercising their First Amendment rights. (Id. at 4.)

Topic 6 describe the matters for examination with reasonable particularity and is not vague, ambiguous, or argumentative. Contrary to the City's assertions, Topic 6 does not require speculation. The City cannot avoid responding to Topic 6 by having its attorney offer unsworn factual assertions on its behalf through argument in the Motion for Protective Order. "We reject . . , proposition that, as a general rule, attorney assertions in briefs to the court can adequately substitute for affidavits and other forms of evidence." Vallejo, 903 F.3d at 743. If the City or the SLMPD does not have any policies, procedures, special orders, customs and directives regarding the arrest of persons engaged in First Amendment activity other than Special Order 1-06, a designee can so testify. Cf. Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 76 (D. Neb. 1995) (If corporation does not possess the knowledge necessary to prepare a designee, "then its obligations under Rule 30(b)(6) obviously cease, [because] the rule requires testimony only as to 'matters known or reasonably available to the organization.'" (quoting Fed. R. Civ. P. 30(b)(6)).

The City's motion for a protective order as to Topic 6 is denied.

8

B. Topic 9: "Any training or educational materials provided to or generated by SLMPD since January 1, 2016 relating to the City's interfering with a police officer ordinance (§ 15.10.010 of the St. Louis City Municipal Ordinance Code)."

The City asserts that Topic 9 is vague and ambiguous because it does not identify what training materials are at issue, and the City is "not aware of any training or educational materials relating to [its] interfering with a police officer ordinance." (ECF No. 83 at 5.) The City also asserts that Topic 9 is duplicative of Topic 7, which requests "policies and procedures relating to the enforcement of the City's interference with a police officer ordinance."

Topic 9 describes the matters for examination with reasonable particularity and is not vague or ambiguous. If there are no such training and educational materials relating to § 15.10.010, the City's designee can so testify. Again, the City cannot meet its Rule 30(b)(6) obligation by attempting to testify through its attorney's unsworn statements and arguments in seeking a protective order. Topic 9 is not duplicative of Topic 7, because "training and educational materials" relating to the City's interfering with a police officer ordinance are separate and distinct categories from "policies and procedures" relating to the same ordinance.

The City's motion for a protective order as to Topic 9 is denied.

C. Topic 10: "City and SLMPD policies and procedures relating to the filming of officers by citizens, including but not limited to Special Order 1-06."

The City argues that Topic 10 is vague and ambiguous, duplicative, and "burdensome as to testimony already acquired" because the City has already produced two designees to speak on Special Order 1-06 in response to (a) Topics 12 and 13, which request any efforts undertaken by the City and SLMPD to ensure their employees do not infringe on the rights of citizens to safely film police officers performing their duties, and (b) Topics 17 and 18, which request efforts undertaken by the City and SLMPD to ensure its employees comply with Special Order 1-06.

Topic 10 describes the matters for examination with reasonable particularity and is not vague and ambiguous. Nor does it improperly duplicate other topics. Topic 10 seeks testimony about "policies and procedures relating to the filming of officers by citizens, including but not limited so Special Order 1-06." In contrast to testimony about "policies and procedures" sought by Topic 10, Topics 12 and 13 call for testimony concerning actual "efforts undertaken" by the City and SLMPD to ensure their employees do not infringe on the rights of citizens to safely film police officers. The City's responses to these topics may be the same, but they may not. Similarly, Topics 17 and 18 call for testimony concerning actual efforts undertaken by the City and SLMPD to ensure that their employees comply with Special Order 1-06. The topics are related and while it is possible the City/SLMPD's testimony responsive to them may include overlap, the topics are distinct.

Further, the City has not met its burden to establish that Topic 10 is unduly burdensome. CMI Roadbuilding, 322 F.R.D. at 355 (the "party resisting production bears the burden of establishing lack of relevancy or undue burden."). Even if responding to Topic 10 requires testimony that duplicates some or all of that responsive to Topics 12, 13, 17, or 18, the City makes only a conclusory assertion that responding to Topic 10 would cause it undue burden. The City's argument that Topic 10 duplicates other topics, and its statement that it has already designated persons who can testify to the other topics, together constitute an admission that the City can readily produce the same designees to testify on Topic 10. It should not require a significant number of questions and answers during the deposition to permit full inquiry into the distinct or overlapping boundaries of these related topics.

The City's motion for a protective order as to Topic 10 is denied.

10

D.. Topic 14: "Any and all policies and procedures produced in response to Plaintiff's First Request for Production, served on October 11, 2019."

The City argues Topic 14 is duplicative and burdensome because it has already produced designees to provide responsive testimony on this topic. The City states it produced two documents in response to Plaintiff's First Request for Production, Special Order 1-06 and Special Order 6-02, and it has already produced two designees to speak on Special Order 1-06.

The City's argument fails to establish either of its points. The City admits that Topic 14 includes inquiry about Special Order 6-02, which the City does not assert it has produced a designee to speak about. Testimony about two distinct special orders cannot be duplicative. To the extent Topic 14 duplicates other topics with respect to Special Order 1-06, it is not unduly burdensome for the reasons discussed above with respect to Topic 10. The City's motion for a protective order as to Topic 14 is denied.

E. Topic 15: "SLMPD's organizational structure and operational relationship with the City, between January 1, 2016 to present."

The City argues this topic is vague and ambiguous and it is "indiscernible what information is being sought from Topic 15." (ECF No. 83 at 6-7.) Nonetheless, the City states that "SLMPD is a Division under the City's Department of Public Safety. Said information is equally available to Plaintiff on City's website." (Id. at 6.) The City's two contentions cannot both be correct. Either Topic 15 is so vague as to be indiscernible, or the responsive factual information offered by its attorney is so obvious and widely available that it is equally available to Plaintiff and no testimony thereon is required.[2]

As to the merits of the City's contentions, the Court finds neither is correct. Topic 15 describes the matters for examination with reasonable particularity and is not vague and

---

[2]Once again, the City cannot respond to Plaintiff's Rule 30(b)(6) notice with factual assertions from its attorney in the instant motion. See Vallejo, 903 F.3d at 743.

ambiguous. The topic's first subject of inquiry is the SLMPD's organizational structure, which necessarily involves more information than its status as a division of a City department. The City must determine what an organizational structure is and then designate person(s) to testify as to the SLMPD's organizational structure. Topic 15's second subject of inquiry is the SLMPD's operational relationship with the City during a specific time period. Even assuming the SLMPD's only operational relationship with the City is that it is a Division in the City's Department of Public Safety, Plaintiff is entitled to obtain sworn testimony to that effect. See Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., 251 F.R.D. 534, 539 (D. Nev. 2008) ("in responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take the position that its documents state the company's position.").

The City's motion for a protective order is denied as to Topic 15.

F. Topic 19: "Data or statistics maintained by SLMPD or the City relating to or reflecting, over the last six years: (a) the number of individuals arrested for taking video of police officers and charged with violation of § 15.10.010 of the St. Louis City Municipal Ordinance Code and (b) the outcome of those charges."

The City argues this topic is improper because it is unduly burdensome and oppressive, argumentative, and outside the scope of Plaintiff's claims. The Court addresses the City's arguments out of order.

### 1. Topic 19 as Argumentative

The City contends Topic 19 is argumentative because it implies "that City officers arrest individual merely for filming them." (ECF No. 83 at 7.) The Court finds the City's interpretation of Topic 19 is not necessarily correct, and even if it were, this would not rise to the level of "annoyance, embarrassment, oppression" that Rule 26(c) protects against. Nonetheless, the Court will amend the language of Topic 19 to require testimony as to "Data or statistics maintained by SLMPD or the City relating to or reflecting, over the last six years: (a) the number

12

of individuals arrested and charged with violation of § 15.10.010 who were taking video of police officers and (b) the outcome of those charges."

### 2. Topic 19 Seeks Relevant Evidence

The City contends Topic 19 is outside the scope of Plaintiff's claims to the extent it seeks incident reports dated after Plaintiff's arrest, as a municipality may be subject to § 1983 liability only if it had a policy or custom of failing to act upon *prior similar complaints* of unconstitutional conduct so "persistent and widespread" as to have the effect and force of law. Andrews v. Fowler, 98 F.3d 1069, 1074-75 (8th Cir. 1996). Recognizing that Plaintiff brings a Monell claim against it, the City argues that incident reports after the date of Plaintiff's arrest on August 8, 2016, are beyond the scope of Plaintiff's allegations as such incidents cannot show a prior pattern of unconstitutional conduct that caused his alleged constitutional violation, citing Andrews. Thus, the City's objection is that Topic 19 seeks information that is not relevant.

As stated above, the scope of discovery under Rule 26(b) is extremely broad as to relevant evidence. Gowan, 309 F.R.D. at 508. Under Federal Rule of Evidence 401, evidence is relevant "if it has *any* tendency to make a fact more or less probable than it would be without the evidence[.]" Fed. R. Evid. 401 (emphasis added). Rule 401 sets a "extremely low burden" for relevancy. Kozlov v. Associated Wholesale Grocers, Inc., 818 F.3d 380, 396 (8th Cir. 2016).

The City's argument as to lack of relevance addresses the issue of causation. But the first issue relevant to municipal liability is the identification of a municipal policy or custom. Similar subsequent incidents may be probative and material of what policies, practices, or accepted City or SLMPD customs existed at the time of Plaintiff's arrest, which would be relevant to Plaintiff's Monell claims. Thus, post-incident evidence is relevant to the *existence* of a custom or policy, from which a plaintiff may argue it was the *moving force* in the alleged unconstitutional

13

violation.  See Meier v. City of St. Louis, Mo., 934 F.3d 824, 828-29 (8th Cir. 2019) (plaintiff with Monell claim must establish, among other things, that municipality's policy or custom was a moving force behind the constitutional violation).   Therefore, post-incident arrests of other persons who were filming police officers carrying out their duties are relevant and probative.

This conclusion is supported by decisions from courts in the 1st, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th Circuits.  See, e.g., Salvato v. Miley, 790 F.3d 1286, 1297 (11th Cir. 2015) ("To be sure, post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right.") (internal punctuation and quoted case omitted); Henry v. County of Shasta, 132 F.3d 512, 519 (9th Cir. 1997), opinion amended on denial of reh'g, 137 F.3d 1372 (9th Cir. 1998) ("[W]e reiterate our rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry."); Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3rd Cir. 1996) (similar subsequent events "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force."); Foley v. City of Lowell, Mass., 948 F.2d 10, 14 (1st Cir. 1991) ("Contrary to the City's exhortation that the date an incident occurs marks the outside date for evidence-gathering on such an issue, we think that actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident."); Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989) (holding introduction of post-event evidence was not error: "Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right.") (citing Grandstaff v. City of Borger, 767 F.2d 161, 171 (5th Cir. 1985)); Sherrod v. Berry, 827 F.2d 195, 205 (7th Cir. 1987), vacated on other grounds, 835 F.2d 1222 (7th Cir.), remanded for

new trial, 856 F.2d 802 (7th Cir. 1988) (admission of post-event incident of excessive force was not an abuse of discretion; stating "subsequent conduct by a municipal policymaker may be used to prove preexisting disposition and policy.") (citing Grandstaff, 767 F.2d at 171); Grandstaff v. City of Borger, 767 F.2d at 171 ("As subsequent conduct may prove discriminatory motive in a prior employment decision, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and subsequent acts may tend to prove the nature of a prior conspiracy, see Anderson v. United States, 417 U.S. 211, 219 (1974), so the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy."); Sanders v. City of Pembroke, 2020 WL 3065918, at *12 (W.D. Ky. June 9, 2020) ("[I]n Monell cases, many courts have found that '[p]ost-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right.'" (quoting Bordanaro, 871 F.2d at 1156)); Abdur-Rahim v. City of Columbus, 2019 WL 1873222, at *2 (S.D. Ohio Apr. 26, 2019) ("Similar subsequent incidents can be probative and material of what policies, practices, or accepted customs existed at the time of the incident at issue, which would be relevant to Plaintiffs' Monell claims."); Cratty v. City of Allen Park, 2018 WL 7351683, at *2 (E.D. Mich. May 21, 2018) (order of magistrate judge finding evidence of citizens' subsequent complaints and the city's treatment of them was discoverable for the plaintiff's claim that the city had an official policy to disregard alleged violations of citizens' rights), aff'd, 2018 WL 3983806 (E.D. Mich. June 14, 2018) (order of district judge); Groark v. Timek, 989 F.Supp.2d 378, 398 (D.N.J. 2013) ("Subsequent incidents, however, may be relevant to show a continuous pattern that supports a finding of an accepted custom or policy."); Lindquist v. Arapahoe County, 2011 WL 3163095, at *2 (D. Colo. July 26, 2011) ("some post-incident conduct may be relevant to a showing of an unconstitutional policy, custom or practice pursuant to Monell"); Mayes v. City of

Hammond, 442 F.Supp.2d 587, 644 & n.14 (N.D. Ind. 2006) ("The Seventh Circuit has held that in some circumstances subsequent conduct taken by municipal officers may be used to prove a preexisting disposition and policy.") (citing Sherrod); Martinez v. Cornell Corrs. of Texas, 229 F.R.D. 215, 223-24 (D.N.M. 2005) (compelling the production of evidence concerning similar claims without a timeframe and concluding that "subsequent acts or conduct may be admissible to establish municipal liability"); Richmond v. City of Brooklyn Center, 2005 WL 6763198, at *6 (D. Minn. April 12, 2005) (post-incident complaints and reports were both probative and relevant to plaintiff's Monell claims to demonstrate that the City and its police department continued to condone and ratify the officers' conduct); Chalmers v. Petty, 136 F.R.D. 399, 404 (M.D.N.C. 1991) ("Subsequent acts or conduct may be used to establish municipal liability in actions brought pursuant to 42 U.S.C. § 1983.").

The Eighth Circuit has not addressed this issue but a few district court cases in this Circuit have questioned whether evidence of activity after the alleged constitutional violation can be used to establish municipal liability under § 1983. See Doe v. Gay, 2012 WL 1078004, at *8 (E.D. Ark. Mar. 30, 2012) ("district courts within the Eighth Circuit have expressed doubts about whether evidence of activity after the alleged constitutional violation can be used to establish municipal liability under section 1983."). Significantly, the cases cited in Doe did not reject evidence of subsequent similar events on relevancy grounds. See id. (citing Jenkins v. Saint Louis Cnty., 2011 WL 5868310, at *12 & n.6 (E.D. Mo. Nov. 22, 2011) (questioning the Fifth Circuit's Grandstaff decision but not addressing the issue of relevancy of subsequent events);[3]

---

[3]In Jenkins v. St. Louis County, 2011 WL 5868310, the plaintiffs cited Grandstaff, the leading decision holding that after-the-fact conduct by a municipality could be relevant to Monell liability, to support their argument that St. Louis County's failure to discipline the officer after the event at issue demonstrated prior notice that its training program was constitutionally deficient. In a footnote, the court stated that Grandstaff was "extremely limited in scope to its facts, and its legal conclusions inapplicable to the current situation" id. at n.6, citing in support Coon v. Ledbetter, 780 F.2d. 1158, 1161-62 (5th Cir.

Youa Vang Lee v. Anderson, 2009 WL 1287832, at *6 & n.6 (D. Minn. May 6, 2009) (same; though recognizing "it may be possible that liability can be established by a pattern of shocking and egregious activity by a municipality after a constitutional violation.")). And notably, when a district court in the Eighth Circuit did address the relevancy of subsequent similar events to a plaintiff's Monell claims, the court concluded the evidence was relevant and discoverable. Richmond, 2005 WL 6763198, at *6 (post-incident complaints and reports were relevant to

---

1986). This Court notes, however, that since 1986, Grandstaff and its progeny have become well established precedent in the Fifth Circuit. The Fifth Circuit cited it with approval in a recent § 1983 case involving 8th and 14th Amendment conditions of confinement claims by the survivors of a highly intoxicated pretrial detainee who died after she was confined in the county jail without medical attention or monitoring. Sanchez v. Young Cnty., Tex., 956 F.3d 785 (5th Cir. 2020), petition for cert. filed, (U.S. Oct. 2, 2020) (No. 20-465). The Fifth Circuit reversed the district court's grant of summary judgment to the county and held it erred in failing to consider, among other things, evidence that the county policymaker effectively ratified the prior misconduct:

> Plaintiffs argue that even after her death, the sheriff neither punished any jailers involved nor took any action to correct the jail's alleged deficiencies. When the official policymaker knows about misconduct yet allegedly fails to take remedial action, this inaction arguably shows acquiescence to the misconduct such that a jury could conclude that it represents official policy. See Duvall, 631 F.3d at 208-09 (upholding jury finding that a county jail maintained an unconstitutional condition where there was evidence that the county policymaker knew of unconstitutional conditions yet failed to revise its policies); Grandstaff v. City of Borger, 767 F.2d 161, 171 (5th Cir. 1985) (holding that, because the city policymaker failed to change policies or to discipline or reprimand officials, the jury was entitled to conclude that the complained-of practices were "accepted as the way things are done and have been done in" that city); see also Piotrowski [v. City of Houston], 237 F.3d [567,] 578 n.18 [(5th Cir. 2001)] (explaining that Grandstaff affirmed municipal liability because a policymaker's post-incident actions can ratify the prior misconduct). Plaintiffs' evidence therefore creates a fact issue about whether the sheriff acquiesced to the allegedly inadequate monitoring practices.

Sanchez, 956 F.3d at 793. The Fifth Circuit did not state in either its Sanchez or Piotrowski decisions that Grandstaff was extremely limited in scope to its facts. As discussed above, Grandstaff is frequently cited by courts in other circuits for the proposition that post-incident actions may be relevant to Monell liability. See, e.g., J.M. by & Through Rodriguez v. County of Stanislaus, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018) ("where there is no indication that the municipality took any action, besides attempting to avoid liability, in response to dangerous conduct, it is reasonable to infer that such conduct is in accordance with a policy. Grandstaff, 767 F.2d at 171.") The Court therefore respectfully disagrees with the Jenkins court's conclusions as to Grandstaff's limitation to its own extreme factual situation.

demonstrate that the City and its police department continued to condone and ratify the officers' conduct.).

In the present case, Plaintiff alleges the City and SLMPD have unconstitutional customs and practices "including but not limited to: falsely arresting people for filming police activity in public, and without probable cause, in violation of the First and Fourth Amendments; enforcing City ordinances in a manner which infringes on free expression and as an improper means for retaliating against protected expression, in violation of the First Amendment; and pursuing baseless municipal prosecutions without probable cause, with malice and for improper retaliatory purposes." (Complaint ¶ 76.) Plaintiff also alleges that "by its actions the City has ratified the unlawful conduct of the Individual Defendants[.]" (Id. ¶ 78.)

The Court finds the clear majority of case law, as set forth above, supports the conclusion that subsequent incidents may be probative of what policies, practices, or accepted customs existed at the time of Plaintiff's arrest, which would be relevant to his Monell claims. From this post-incident evidence the jury may imply the existence of a pre-incident policy, and the evidence may also infer knowledge and moving force. Although this is tenuous, Plaintiff would be able to argue from post-arrest evidence that the individual Defendant officers were aware of the City/SLMPD's pre-arrest policy or custom, and it was therefore a moving factor in their conduct.

This action remains at the discovery stage of litigation. The limited information Plaintiff seeks—the number of arrests involving persons who were filming police conduct, and the disposition of those arrests—may lead to the discovery of admissible evidence, even where the arrests occurred after that of Plaintiff. These documents may identify relevant individuals and clarification on what policies and practices existed at the time of Plaintiff's arrest. Information

18

need not ultimately be admissible into evidence to be discoverable. Fed. R. Civ. P. 26(b). In finding that the information sought by Topic 19 falls within the scope of discovery, the Court issues no ruling on the potential admissibility of post-incident arrests with regard to Plaintiff's claims. That issue can be addressed after the close of discovery.

### 3. Topic 19 is Not Unduly Burdensome or Oppressive

Finally, the City contends Topic 19 is unduly burdensome and oppressive because while it can conduct a computerized search of SLMPD records for all persons arrested for violating § 15.10.010 during the relevant time period, the search yielded over 400 results and it is not possible to conduct a more specific search for "individuals arrested for taking video of police officers." (ECF 83-2, Preiss Dep. at 9:13-22.) An employee of the Police Department would have to review each incident reports to determine its relevancy to Topic 19, and then for relevant reports run the suspect's information through a separate system to determine the outcome of the charges. (Id. at 14:4-15:1.) The City estimates such a review is likely to take one employee over six weeks. (ECF 83-3, Eckrich Decl.)[4]

A party responding to a Rule 30(b)(6) deposition notice "must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." Bigsby v. Barclays Capital Real Estate, Inc., 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (quoted case omitted). "Even if the documents are voluminous and the review of those documents would be burdensome, the [Rule 30(b)(6)] deponents are still required to review them in order to prepare themselves to be deposed." Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co., 201 F.R.D. 33, 37 (D. Mass. 2001) (citing Prokosch v. Catalina Lighting, Inc., 193

---

[4]This document is titled "Affidavit" but it was not signed and sworn to before someone authorized to administer an oath. As such, it is not an affidavit. See Elder-Keep v. Aksamit, 460 F.3d 979, 984 (8th Cir. 2006). Ms. Eckrich declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that her statements are true and correct. The document is therefore a Declaration.

F.R.D. 633, 639 (D. Minn. 2000) ("the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a corporation, that is involved in litigation, can be fully and fairly explored.")).

"[A] party resisting production bears the burden of establishing . . . undue burden." CMI Roadbuilding, 322 F.R.D. at 355 (quoted case omitted). Here, to establish undue burden the City offers SLMPD Paralegal Danielle Eckrich's declaration, which states in relevant part, "Reviewing over 400 incident reports would take me approximately six weeks." (ECF 83-3.) Apart from this single quantification, Ms. Eckrich provides no additional information. Her declaration does not state, for example, (1) how many pages a typical incident report consists of; (2) how long she estimates it would take to review a single incident report, (3) what her estimate of six weeks is based on; e.g., is this six forty-hour weeks of Ms. Eckrich doing nothing but reviewing the incident reports, or is this how long it will take her to review the incident reports while performing other duties; (4) how long it takes to perform the second search to determine the outcome of an arrested person's case; (5) if the six-week estimate includes time required to check all 400-plus incident reports in the second database, or only the relevant reports of persons arrested for violating § 15.10.010 who were filming police officers carrying out their duties and, if the latter, how many incident reports she estimated would require a second search; (6) if there are any other persons in the SLMPD or the City who can assist with review of the incident reports;[5] or (7) what important duties Ms. Eckrich is unable to delay or would be unable to perform while reviewing the incident reports. Without further information of this kind, the Court cannot determine how much weight to give the Eckrich declaration as evidence of undue burden.

---

[5] The Court takes judicial notice the SLMPD has a "workforce of . . . over 400 civilian employees and 1,300 sworn officers." Metropolitan Police Department, City of St. Louis, Missouri, https://www.slmpd.org/ (last visited Dec. 3, 2020).

The Court finds the City has not met its burden to establish that conducting a manual review of 400 incident reports to determine if they involve the arrest of a person who was filming police officers is unduly burdensome or oppressive, given the fact that the City's sole evidence to show undue burden fails to offer the Court substantial guidance. The Court has also considered the proportionality factors under Federal Rule of Civil Procedure 26(b)(1), and finds that the factors regarding importance of the First Amendment rights at stake, the importance of the evidence to the case as discussed above, the amount in controversy, the parties' relative access to relevant information, and the parties' relative resources weigh in favor of requiring the City to undertake a review the incident reports and other records necessary to prepare a Rule 30(b)(6) deponent to respond to Topic 19.[6]

The City's motion for a protective order is denied as to Topic 19.

G.   Topic 20: "The factual basis for the City's denial of allegations contained in Plaintiff's First Amended Complaint, specifically Paragraphs Nos. 19, 21, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 40, and 42."

The City argues Topic 20 is duplicative of testimony already acquired by Plaintiff from other Rule 30(b)(6) designees or the police officer Defendants, calls for legal conclusions, is burdensome, and requires undue expense "in that the City's position on said denials are evident from [other] testimony." (ECF No. 83 at 8-9.) The City states that the reasons for its denials to Paragraphs 24, 28, and 34 were testified to by the officer Defendants in their depositions (id. at 9), it denied Paragraph 31 because the Amended Complaint included the wrong date for the filing of formal charges against Plaintiff, and it denied Paragraph 27 because "Plaintiff claims he paid fifty dollars to be released on bond when Plaintiff's deposition testimony made clear that

---

[6]Contrary to the City's assertion in its Reply (ECF No. 87 at 5), Plaintiff's Rule 30(b)(6) deposition notice does not ask it to produce documents responsive to Topic 19. Instead, it requests the City to produce a designee to testify about the facts revealed by review of the documents.

someone else paid for his bond." (Id.) The City does not offer explanation for its denial of the other thirteen Paragraphs identified in Topic 20.

As has been previously stated, the City cannot respond to the Rule 30(b)(6) notice through its attorney's factual statements. Vallejo, 903 F.3d at 743. This, however, is the sum of its arguments in support of its motion for a protective order as to Topic 20. Topic 20 seeks to discover the factual bases of the City's denials of some of the Amended Complaint's factual allegations at the time those denials were made. These may or may not be the same factual bases that have come out in discovery thus far, but Plaintiff is entitled to ask these questions of the City—as opposed to the officer Defendants—and obtain its sworn testimony in response. The facts at issue are relevant because they go directly to key issues in the case, i.e., whether Plaintiff's factual allegations are true. The City does not identify any of the Paragraphs that are legal conclusions, and its assertions as to burden and undue expense are conclusory and insufficient to meet its burden. See id.

The City's motion for a protective order is denied as to Topic 20.

Accordingly,

**IT IS HEREBY ORDERED** the City of St. Louis's Motion for Protective Order (ECF No. 83) is **DENIED.**

_Ronnie L. White_

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this _4th_ day of December, 2020.

22