IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID WHITT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Cause No. 4:18-CV-1294 |
| | ) |
| CITY OF ST. LOUIS, *et al.* | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' STATEMENT
OF UNCONTROVERTED MATERIAL FACTS**

Defendants Ryan Linhorst ("Linhorst"), Matthew Karnowski ("Karnowski"), Matthew Shaw ("Shaw"), Bobbie Baine ("Baine") and the City of St. Louis ("City") (collectively referred to herein as the "Defendants"), by and through his undersigned counsel, and pursuant to Local Rule 7-4.01.E, hereby submit the following Statement of Uncontroverted Material Facts:

1. On August 8, 2016, police responded to a call about five fleeing suspects from a stolen minivan. Ex. A, Deposition of Matthew Shaw, at 10:1-12.

2. Police officers, including Shaw, apprehended some of the fleeing suspects. Ex. A at 10:13-20.

3. At least one suspect remained at large. Ex. A at 25:23-26:3.

4. After assembling at a northern location where some suspects were found, the police relocated a couple of blocks south, to the 5000 block of Wells, where the stolen vehicle was located. Ex. B, Deposition of Matthew Karnowski, at 34:22-35:5.

5. Initially seeing the police at the northern location, David Whitt ("Plaintiff") followed the police to the 5000 block of Wells. Ex. B at 47:3-48:4.

6. Plaintiff drove his bicycle in the middle of the street, past multiple police vehicles, coming

within several feet of the police officers and the stolen minivan. *See* Ex. C, Incident Video, at 0:34-0:55.

7. Police officers at the scene, including Linhorst, Karnowski, and Shaw, were not familiar with Plaintiff, and did not know his purpose at the crime scene. *See e.g.*, Ex. D, Deposition of Ryan Linhorst, at 30:21-31:14 & 42:24-43:1; Ex. B at 43:23-44:7.

8. Police did not yet have the opportunity to search the stolen vehicle or canvass the area for evidence prior to Plaintiff's arrival at the scene. Ex. A at 29:6-17; Ex. B at 49:20-50:5; Ex. D at 26:13-21.

9. It is common for fleeing suspects to abandon evidence while fleeing, therefore, a crime scene involving fleeing suspects is often expanded broadly until the police are able to assess where relevant evidence is located. Ex. A at 29:6-17; Ex. B at 49:20-50:5; Ex. E, Deposition of Eric Armstead, 60:22-61:4.

10. After riding his bicycle past the police vehicles, Plaintiff stood on the sidewalk, within fifteen to twenty feet in front of the stolen vehicle, and within ten feet of the nearest police officer. *See* Ex. C at 1:35; *see also*, Ex. A at 29:21-24 & 27:21-28:1; Ex. B at 50:16-21.

11. Upon observing Plaintiff's proximity to the stolen vehicle and officers, Linhorst told Plaintiff "you gotta scoot back, man" and further explained "we got a crime scene here." Ex. C at 1:37-1:38.

12. Linhorst's rationale for the command was to allow police room to assess the scene for evidence, and provide a safe reactionary gap between Plaintiff and the other officers. Ex. D at 26:13-21 & 29:25-31:14.

13. Plaintiff took only a couple steps back. Ex. C at 1:44-1:46; Ex. D at 28:6-8.

14. Linhorst again instructed Plaintiff to "scoot back." Ex. C at 1:48.

15. Plaintiff told Linhorst "hey, I'm not interfering with y'alls crime scene," "I'm back." Ex. C at 1:49-1:51.

16. Linhorst instructed Plaintiff to move back "about another ten feet, man." Ex. C at 1:58.

17. Plaintiff again refused and told Linhorst "I'm not interfering, y'all got plenty of room; there's nothing over here." Ex. C at 1:59-2:03.

18. Linhorst told Plaintiff, "no, about another ten feet." Ex. C at 2:03-2:04.

19. Plaintiff refused to move. Ex. C at 2:04-2:26.

20. Linhorst grew suspicious why Plaintiff insisted on standing so close to the scene when he recognized that Plaintiff's camcorder has zooming capabilities, and determined Plaintiff may be a threat to officer safety. Ex. D at 30:21-31:14; 32:1-14.

21. Karnowski approached Plaintiff and instructed him to "back up another twenty feet." Ex C at 2:26.

22. Plaintiff refused. Ex. C at 2:29.

23. Karnowski assured Plaintiff he could record, but he just needed to back up. Ex. C at 2:29.

24. Instead of backing up, Plaintiff asked "what's going on?" Ex. C at 2:31.

25. Karnowski again told Plaintiff "I need you to back up, partner." Ex. C at 2:32-2:33.

26. Instead of complying, Plaintiff argued with Karnowski, telling him "I'm backed up already, I'm not interfering with y'all; ain't nothin' over here." Ex. C at 2:33-2:36.

27. Karnowski again told Plaintiff that he needed to back up some more. Ex. C at 2:37.

28. Plaintiff appeared to take one step back. Ex. C at 2:38.

29. Karnowski told Plaintiff, "back by that light post would be really good." Ex. C at 2:40-2:42.

30. The light post was ten to fifteen feet behind Plaintiff. Ex. A at 30:13-16; Ex. B at 52:24-

3

53:1.

31. Plaintiff refused Karnowski's commands, and told him "there's nothing over here, I'm not interfering with y'all's crime scene." Ex. C at 2:43-45.

32. Karnowski and Shaw explained to Plaintiff that he was in their work space. Ex. C at 2:47-2:48.

33. Plaintiff continued to argue, repeating that he was not interfering. Ex. C at 2:49-2:53.

34. Karnowski told Plaintiff again, "I want you to back up to this light post; you can record all you want, I just need you to back up to the light post." Ex. C at 2:53-2:56.

35. Plaintiff refused and argued with Karnowski that "there's no set feet" and that there was no caution tape up. Ex. C at 2:57-2:59.

36. Karnowski again told Plaintiff to back up to the light post and that he was in danger of interfering. Ex. C at 3:00-3:02.

37. Plaintiff refused and proceeded to ignore the officers' presence by narrating the video. Ex. C at 3:03-3:07.

38. At that point, Plaintiff was arrested. Ex. C at 3:10-3:11; Ex. D at 41:20-24.

39. Plaintiff's camcorder was seized incident to arrest. Ex. D at 47:3-12.

40. Plaintiff's refusal to obey police commands was a distraction to police at the scene, and hindered the police's ability to properly investigate the scene. Ex. B at 52:4-23.

41. Plaintiff would not have obeyed police commands even if the officers had given him more time to comply with their commands. Ex. F at 134:23-137:19.

42. While Plaintiff was interacting with the officers, the police considered the border of the crime scene to be within approximately fifty feet of the stolen vehicle. Ex. A at 36:11-15.

43. At least one other civilian observing police activity from across the street and forty to fifty

4

feet away was not arrested.  Ex. A at 36: 1-10.

44. Plaintiff's friend, Jacob Crawford, who was also video recording police activity near the scene, was not arrested that day.  Ex. D at 27:1-17; Ex. G at 23:3-5 & 89:4-92:5.

45. Plaintiff did not know why the police were there that day, or what crime they were investigating.  Ex. F at 102:18-103:22.

46. Linhorst drafted a warrant affidavit to search the contents of Plaintiff's camcorder.  Ex. H.

47. The affidavit describes the probability that evidence of Plaintiff's interference could be found on Plaintiff's camcorder by providing:

> On August 8, 2016, I was in the 5000 block of Wells relative to an investigation involving a stolen vehicle.  While on the scene, David Plaintiff interfered with our Tampering 1st investigation.  While interfering, David Plaintiff was operating and filming, thus documenting, his interfering with the aforementioned video recording device he was in possession of.

Ex. H.

48. Baine's contribution to the warrant application was merely to help supplement the technical language of what the search of Plaintiff's camcorder would entail from a technological aspect.  *See* Ex. H; Ex. I, Deposition of Bobby Baine, at 57:20-58:16 & 60:2-23.

49. A judge signed the warrant on August 9, 2016 at 9:02 a.m.  Ex. H.

50. Baine had no part in the probable cause determination of Plaintiff's arrest, nor did he have any part in the probable cause portion of the affidavit to search Plaintiff's camcorder.  Ex. I at 65:6-11; 67:10-24.

51. In the course of his regular duties as an Examiner in the Cyber Crimes Division, Baine made a forensic image of the SD card found in Plaintiff's camcorder, and extracted two videos from the forensic image pertaining to the day of Plaintiff's arrest.  Ex. I at 16:22-17:3.

5

52. Pictures of the camcorder in police custody show no damage to the camcorder. Ex. J, Pictures of Camcorder.

53. On October 6, 2016, charges were instigated against Plaintiff for interfering under City Code 15.10.010. Ex. O, Whitt Information.

54. On December 26, 2016, Plaintiff requested the return of his camcorder. Ex. K, Deposition of Richard Sykora, at 25:2-26:12; *see also*, Ex. L, Whitt Req for Camcorder.

55. On January 4, 2017, Plaintiff's camcorder was returned to him. Ex. K at 25:2-26:12.

56. On May 22, 2017, Plaintiff's municipal case was dismissed. Ex. K at 30:14-16.

57. Plaintiff interfered with the officers' duties by refusing continued commands to back up, which hindered the officers' ability to evaluate the crime scene for evidence, and limited their space to assess the scene. Ex. A at 55:11-56:5.

58. Plaintiff's proximity to the stolen vehicle interfered with the officers as there were reasonable concerns Plaintiff's presence in the crime scene would spoil or compromise evidence, as fleeing suspects often abandon evidence near the crime scene while fleeing. Ex. D at 26:13-21; Ex. B at 43:23-44:7 & 49:20-50:5.

59. Plaintiff's proximity to officers and his continual refusal to obey reasonable commands interfered with the officers as it caused them to be concerned for their safety. Ex. B at 52:4-23; Ex. D at 30:21-31:14; 32:1-14.

60. The official policy of the City of St. Louis Police Department acknowledges that citizens have a First Amendment right to observe and record police activity in public places so long as their actions do not interfere with the officer's duties or officer safety. Ex. M, SO 1-06.

61. On average, from 2014-2020, the City employed over 1,200 sworn police officers. Ex. N, Affidavit of Charles Wall; *see also*, Doc. 20, n. 5.

62. From 2014-2019, City officers made over 85,000 arrests.  Ex. N.

63. From 2014-2019, City officers made over two million civilian contacts.  Ex. N.

64. St. Louis City municipal prosecutors handle over 95,000 cases a year on average.  Ex. K at 37:25.

Respectfully Submitted,

MICHAEL GARVIN
CITY COUNSELOR

By: /s/ Abby Duncan
Abby Duncan #67766MO
Erin K. McGowan #64020MO
1200 Market Street, Room 314
City Hall
St. Louis, Mo  63103
(314) 622-4694
(314) 622-4956 fax
DuncanA@stlouis-mo.gov
McGowanE@stlouis-mo.gov
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify the foregoing was electronically filed on February 11, 2021, with the Court for service by means of Notice of Electronic Filing upon all attorneys of record.

/s/ Abby Duncan