**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DAVID WHITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-cv-1294 |
| ) | |
| CITY OF ST. LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff David Whitt, by and through undersigned counsel, and in response and opposition to Defendants' Motion for Summary Judgment states as follows:

**RELEVANT FACTS**

David Whitt, having learned that the police were active in his neighborhood, grabbed his camcorder and headed out to document what the police were up to, as he had many times before. Mr. Whitt was an experienced cop-watcher, having helped form the organization WeCopWatch about two years earlier. *See* Plaintiff's SUF, ¶ 1 ("Pl's SUF"). The purpose of the organization was to promote police accountability by educating the public about their right to record the police in public. *See* Pl's SUF, ¶ 2. The organization also trained its cop-watchers on how to record police activity safely and without interfering in whatever incident they were documenting. *Id.* Mr. Whitt's goal was to calmly document the situation. Pl's SUF, ¶ 3.

When Mr. Whitt initially reached the police officers, he found them gathered in an alley at the back of a vacant lot. Pl's SUF, ¶ 4. He was recording from the time he arrived at the scene. Pl's SUF, ¶ 5. Mr. Whitt did not have any interaction with police at the first place he encountered them. Pl's SUF, ¶ 6. Eventually the police left that location. Pl's SUF, ¶ 7.

1

Hearing radios and other sounds of police activity nearby, Mr. Whitt proceeded to the new location where the officers had gathered. Resp. to Defs' SUF, ¶ 5. A group of police vehicles had parked on the 5000 block of Wells. *See* Defs' SUF, ¶ 5. There was no caution tape up. Pl's SUF, ¶ 8. No officers were positioned near or even monitoring the perimeter of what was in no way evidently a crime scene. *See* Resp. to Defs' SUF, ¶ 8.

Mr. Whitt rode his bicycle down Wells Avenue, recording his activity and that of the police on scene on his video camcorder. *See* Defs' SUF, ¶ 6. He came within a few feet of a number of police vehicles and officers, none of whom gave him any indication that he was doing anything wrong or interfering with any kind of police work. Response to Defs' SUF, ¶ 8. Mr. Whitt, after distancing himself from the parked police vehicles, moved onto the sidewalk at a safe distance and began to record the scene. Resp. to Defs' SUF, ¶ 10. While Mr. Whitt rode his bicycle through the scene and turned around to continue recording, "[t]here was no indication … that anybody was looking for or searching for evidence." Pl's SUF, ¶ 11.

Eventually, certain officers noticed Mr. Whitt. These officers first obstructed his view of the scene, and then began demanding that he move farther away from the scene he was recording. Pl's SUF, ¶ 12. The officers repeatedly insisted that Mr. Whitt keep backing up, even after he complied by taking a few steps backwards. Pl's SUF, ¶ 13.

Mr. Whitt did not follow the officers' commands because his experience led him to recognize that the commands were intended to harass him. *See* Pl's SUF, ¶ 14. He made it clear that he had no intention of interfering with the officers' work and that he was only there to observe. Pl's SUF, ¶ 19. As the officers continued to insist that he back up and Mr. Whitt continued taking steps backward, a total of three officers gathered around Mr. Whitt. Eventually, Sgt. Karnowski, who was in charge of the scene, ordered the other officers to arrest Mr. Whitt. *See* Pl's SUF, ¶ 20.

2

Mr. Whitt was taken in and held for about ten hours. Pl's SUF, ¶ 22. He was charged with interfering with an officer in the performance of their duties pursuant to City of St. Louis statute. Pl's SUF, ¶ 23. During the pendency of the case, the City attempted to have Mr. Whitt sign a waiver of liability releasing the City and its officers from facing consequences for their false arrest of Mr. Whitt. Pl's SUF, ¶ 24. Eventually, on the eve of Officers Karnowski and Linhorst's depositions, , the City disposed of his case by *nolle prosequi*. *See* Pl's SUF, ¶¶ 25-27. Mr. Whitt has filed the instant lawsuit against the City and the officers who arrested him in retaliation for exercising his right to record them in public.

## LEGAL STANDARD

There is no dispute over the well-settled burden of proof at the summary judgment stage. However, given Defendants' significant reliance on qualified immunity in attempting to defeat Mr. Whitt's claims, a preliminary word on that legal standard is warranted.

Qualified immunity is a two-step analysis. At the first step, the Court "determine[s] whether a constitutional right has been violated." *Ross v. City of Jackson*, 897 F.3d 916, 920 (8th Cir. 2018). At the second step, the Court asks whether the right at issue was "clearly established" at the time of the alleged constitutional violation. *Id.*; *see also Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). In the Fourth Amendment warrantless arrest context, an officer is not entitled to qualified immunity if they "should have known that the arrest violated plaintiff's clearly established right." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005). The "salient question" is whether the state of the law at the time of Mr. Whitt's arrest gave the Defendant Officers "fair warning" that the arrest was unconstitutional. *Neal v. Ficcadenti*, 895 F.3d 576, 582 (8th Cir. 2018); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The Eighth Circuit recently clarified the "clearly established" prong, noting that finding a factually-identical case is not necessary to defeat a claim of qualified immunity: "'[E]xisting precedent must place the lawfulness of the particular arrest beyond debate'; however, '**there does not have to be a case directly on point**.'" *Bell v. Neukirch*, 979 F.3d 594, 606 (8th Cir. 2020) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018); *White v. Pauly*, 137 S.Ct. 548, 552 (2017)) (emphasis added). Further, "'**general statements of the law are not inherently incapable of giving fair and clear warning to officers,** but in the light of pre-existing law the unlawfulness must be apparent." *Bell*, 979 F.3d at 610 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)) (emphasis added).

In assessing a qualified immunity argument raised at the summary judgment stage, the court must view the facts in the light most favorable to the plaintiff. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010).

## ARGUMENT

**I.     The Defendant Officers are not entitled to qualified immunity on counts I-IV because they had no probable cause to arrest David Whitt and they violated his clearly established rights.**

The most important question in this case is clear: whether the Defendant Officers had probable cause to arrest David Whitt for interfering with their duties. The Defendant Officers argue that probable cause existed, which, were it true, would end the analysis on the issue. However, because there was not, in fact, probable cause for the arrest, the Court must proceed to determining whether Mr. Whitt's right to be free from arbitrary arrest in retaliation for exercising his constitutionally-protected right to record police officers in public was clearly established at the time of his arrest.

4

Counts I and II require no further analysis: if Mr. Whitt's arrest lacked probable cause and that was clearly established at the time, the arrest was unconstitutional.[1] Count IV similarly turns on just one issue: whether probable cause existed (and, if not, whether that was clearly established) for the search of Mr. Whitt's camera. Count III, where Mr. Whitt alleges that the Defendant Officers retaliated against him for exercising his First Amendment rights, adds an additional question: whether Mr. Whitt's arrest by the Defendant Officers was motivated by his exercise of his First Amendment rights. Because the evidence, taken in the light most favorable to Mr. Whitt, demonstrates that the Defendant Officers did not have probable cause to arrest Mr. Whitt and the arrest was motivated by Mr. Whitt's First Amendment activity—or at least raises material questions about those facts—Counts I-IV should survive summary judgment.[2]

### a. *The officers violated Mr. Whitt's clearly established rights by arresting him.*

The evidence in the record does not support the Defendant Officers' claim that they had probable cause to arrest Mr. Whitt for interfering with their work in the aftermath of an alleged vehicle theft. Reasonable officers in their position would have known that Mr. Whitt was not interfering with their work and that he had a First Amendment right to record their activity in public. Indeed, then-binding constitutional law expressly acknowledged the existence of this right. But the officers arrested Mr. Whitt anyway. Because it was clear he was not violating the ordinance the police cited to justify his arrest, the arrest lacked probable cause and violated Mr. Whitt's constitutional rights.

i. The arrest lacked probable cause.

---

[1] Of course, because this is the summary judgment stage, Mr. Whitt is not required to demonstrate this conclusively. He must show only that there exist one or more genuine issues of material fact that bear on whether the arrest was constitutional. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[2] The parties have stipulated to the dismissal of the following counts from Mr. Whitt's First Amended Petition: All counts as to Defendant Baine; Count V as to the City of St. Louis, the only defendant on that count; and Count VII as to all defendants. *See* Joint Stipulation of Dismissal, filed March 15, 2021.

The uncontroverted facts demonstrate that there was no probable cause for the Defendant Officers to arrest Mr. Whitt. Alternatively, one or more material facts remain in dispute. In either case, Mr. Whitt's claims should survive the summary judgment stage.

"A warrantless arrest that lacks probable cause violates the Fourth Amendment." *Robbins v. City of Des Moines*, 984 F.3d 673, 679 (8th Cir. 2021) (citing *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013)). The question of whether probable cause for an arrest exists "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Baribeau*, 596 F.3d at 474 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). Probable cause exists when "the totality of the circumstances at the time of the arrest '[is] sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Joseph v. Allen*, 712 F.3d 1222, 1226-27 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011)).

In answering whether Defendants had probable cause to arrest Mr. Whitt, the Court should first look to the ordinance forming the basis for his arrest. *See Wilson v. Jefferson County*, 4:18-CV-1957 CAS, 2019 WL 4860665, *6 (E.D. Mo. Oct. 2, 2019) (in determining whether probable cause for arrest existed, "[t]he Court first examines the state statute on which plaintiff's arrest was based") (citing *Baribeau*, 596 F.3d at 474-78). Mr. Whitt was arrested for and eventually charged with violating St. Louis City Code 15.10.010: "Whoever shall, in this City, … hinder, obstruct, resist, or otherwise interfere with any City officer in the discharge of his official duties … shall be deemed guilty of a misdemeanor."

This Court's precedent demonstrates that Mr. Whitt's actions did not give rise to probable cause to believe he was interfering with the officers at the scene. Indeed, "no reasonable officer could conclude that a citizen's passive observation of a police-citizen interaction from a distance

6

was criminal." *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020). In *Chestnut*, the plaintiff had observed two traffic stops by a female officer at night, causing her to radio for assistance with a person who was following her. *Id.* at 1087. After he was detained by a second officer, who found him lurking in the area, the plaintiff sued the detaining officer under § 1983. The *Chestnut* court held that the officer did not have probable cause for the detention. In its probable cause analysis, the court found that a previous case, *Walker v. City of Pine Bluff*, "put[] this constitutional question beyond debate." *Id.* (relying on *Walker v. City of Pine Bluff*, 414 F.3d 989 (8th Cir. 2005)).

The Defendant Officers cite to *City of St. Louis v. Jones*, 536 S.W.3d 794 (Mo. App. E.D. 2018), for the proposition that a person who "ignored police commands to 'get back'" had thereby violated the ordinance in question. While *Jones* does examine and apply the same ordinance, the facts the Defendant Officers exclude from their discussion of *Jones* demonstrate its inapplicability to Mr. Whitt's case.

The criminal defendant in *Jones* did considerably more than merely ignore an order to back up:

> the video of Defendant's arrest clearly shows Officer Osorio was in uniform and standing directly in front of Defendant with his Taser drawn when he commanded Defendant to "Get back!" The video also clearly shows Defendant ignored these commands and *pushed past Officer Osorio*, stating "no, I'm going this way, I'm leaving."

*Jones*, 536 S.W.3d at 799 (emphasis added). Ignoring the order to "get back" was not the action that gave rise to probable cause for the arrest in *Jones*. A case where the criminal defendant made physical contact with a police officer who was clearly standing in the Defendant's path simply cannot stand for the proposition that any person who simply ignores a command to back up has violated the ordinance.

7

Under the totality of the circumstances, the Defendant Officers' determination that they had probable cause to arrest Mr. Whitt for interfering was mistaken, and it was not objectively reasonable. *See Dowell*, 762 F.3d at 777. Like in *Chestnut* and *Walker* above, Mr. Whitt was merely passively observing police conduct when the Defendant Officers approached him. Linhorst testified that Mr. Whitt did not engage in an aggressive act towards the officers. *See* Pl's SUF, ¶ 15. Linhorst also testified that Mr. Whitt had not said anything to any police prior to Linhorst approaching him. *Id*. Like the plaintiffs in *Walker* and *Chestnut*, Mr. Whitt only began interacting with the officers after they approached him first. Like Walker, Mr. Whitt was silently watching and recording the police activity from some distance away. *See Walker*, 947 F.3d at 1089-90. And unlike the plaintiff in *Jones*, Mr. Whitt never "pushed past" or made physical contact with police. *See* Pl's SUF, ¶ 15.

Not only do Mr. Whitt's actions demonstrate that the Defendant Officers had no probable cause to arrest him, their actions on the day in question belie their stated reasons for the arrest, i.e. that Mr. Whitt was a threat to officer safety and threatened to spoil evidence. *First*, the Defendant Officers' conduct indicates they did not feel Mr. Whitt was interfering with police activity. Mr. Whitt rode his bicycle down the middle of the street on which all of the police vehicles and the allegedly stolen mini-van were parked. Defs' SUF, ¶ 6. He even came within a few feet of officers and the allegedly stolen minivan. *Id.* During all of this, however, no officer gave him any indication that he was doing anything wrong. *See* Resp. to Defs' SUF, ¶ 8. Indeed, one officer made it clear that he had seen Mr. Whitt by waving to him after Mr. Whitt had stopped and turned around on the sidewalk (after riding down the middle of the street). This officer gave no indication whatsoever that Mr. Whitt could be interfering in a police investigation or that the officer believed

he could be. *Id.* Whatever Mr. Whitt was doing prior to being approached by the officers was evidently not immediately dangerous or disruptive.

*Second*, there is controverted evidence as to whether the police were actively searching for evidence in the area or reasonably viewed Mr. Whitt as a threat. Mr. Whitt's expert testified in his deposition that the video footage gave no indication that the Defendant Officers were searching for evidence. Resp. to Defs' SUF, ¶ 8. That the officers did not legitimately fear for their safety is demonstrated by the fact that, even when Mr. Whitt was closer to both officers and the allegedly stolen vehicle, none of the officers did anything in reaction to him but wave. Surely no officer honestly and legitimately concerned for their safety would simply allow the subject that had put their safety into question to continue riding his bicycle past other officers, police vehicles, and the allegedly stolen vehicle. Nothing changes in Mr. Whitt's positioning and he does not interact with any officers before Linhorst first tells him to back up. No officer identified what happened in the intervening moments that allegedly changed Mr. Whitt's status from benign to threatening. Linhorst testified that Mr. Whitt did not engage in an aggressive act towards the officers. *See* Pl's SUF, ¶ 15. Plaintiff's expert testified "I don't think there was any evidence that [Mr.Whitt] created a danger to the officers …." Pl's SUF, ¶ 28. To the extent the Defendant Officers relied on their feeling threatened by Mr. Whitt to determine that he had interfered with their duties, both their own actions and the opinion of an expert on policing demonstrate that that belief was unreasonable. And without an objectively reasonable belief that Mr. Whitt had committed an offense, the Defendant Officers did not have even arguable probable cause to arrest him.

### ii. Mr. Whitt's rights were clearly established.

Qualified immunity exists to allow police officers to avoid the constant threat of litigation while they are doing their jobs. *Hoyland v. McMenomy*, 869 F.3d 644, 657 (8th Cir. 2017). "But

to receive that protection, [the court] must find as a matter of law that the officers acted within the confines of the Constitution." *Id.* at 657-58. Qualified immunity does not make police officers immune to responsibility for violating a person's constitutional rights when the officers clearly ought to have known better.

"Every circuit court to have considered the question has held that a person has the right to record police activity in public." *Chestnut*, 947 F.3d at 1090 (citing *Fields v. City of Philadelphia*, 862 F.3d 353, 355-56 (3d Cir. 2017)). At least four circuit courts had found that was the case long before Mr. Whitt's arrest. *See id.* (citing *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012); *Glik v. Cunniffee*, 655 F.3d 78, 82-83 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). The Eighth Circuit has stated that it may look to non-binding precedent in determining whether a right was clearly established:

> In order to determine whether a right is clearly established, it is not necessary that the Supreme Court has directly addressed the issue, nor does the precise action or omission in question need to have been held unlawful. In the absence of binding precedent, a court should look to all available decisional law including decisions of *74 state courts, other circuits and district courts....

*Hayes v. Long*, 72 F.3d 70, 73-74 (8th Cir. 1995) (quoting *Norfleet v. Arkansas Dep't. of Human Services*, 989 F.2d 289, 291 (8th Cir. 1993).

The Eighth Circuit, "has been quite forthright in upholding the rights of citizens to engage with officers while they perform their duties." *Id.* In *Hoyland*, this Court found that officers were not entitled to qualified immunity for arresting a man who had yelled at officers as they were arresting his wife. *See Hoyland*, 869 F.3d 644. And it "did so despite 'any fear of danger the officers felt due to Hoyland's presence.'" *Chestnut*, 947 F.3d at 1091 (quoting *Hoyland*, 869 F.3d at 654-55) (internal brackets removed). Further, while it was decided in 2017, after the events at question in this case took place, the court in *Hoyland* held that "[i]t was clearly established in 2013

10

'that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment.'" *Hoyland*, 869 F.3d at 653 (quoting *Baribeau*, 596 F.3d at 478). Therefore, the only issue remaining was "whether the officers' arrest was constitutional." *Id.* at 652.

In 2005, the Eighth Circuit found that conduct strikingly similar to Mr. Whitt's in this case did not give rise to probable cause. In *Walker*, the court had "a case of a citizen who was arrested when he stood at a considerable distance from police officers engaged in a conversation with young men, who spoke only when spoken to, and who complied with Grace's request for identification after pointing out that he had done nothing wrong." *Walker*, 414 F.3d at 993.

The Defendant Officers contrast this case with *Walker* in order to argue that they had no way to know in August 2016 that there was no probable cause to arrest Mr. Whitt for filming police activity in public. But in doing so they place undue weight on the absolute distance between the officers and the arrestee, misstate the facts of Mr. Whitt's case, and beg the question whether he was interfering. The Defendant Officers claim that Mr. Whitt "was standing in the middle of an active crime scene fifteen to twenty feet away from the police." Doc. 95 at 11. Both of these facts are contested. It is disputed whether Mr. Whitt was standing in an "active crime scene." And if Mr. Whitt was not, in fact, standing in a crime scene, then the case he was intentionally interfering with police activity is much more difficult to make. The distance Mr. Whitt was standing from police also is in dispute. The Defendant Officers claim that Mr. Whitt was standing "fifteen to twenty feet away from the police." But according to Mr. Whitt's expert, the distance was more like 25 feet. *See* Resp. to Defs' SUF, ¶ 10. Regardless, the court in *Walker* did not hold that 40-50 feet was the absolute closest a person could stand to a police officer without interfering. Instead, the court's holding was that a "silent, non-interfering onlooker" could not be constitutionally arrested for having distracted or otherwise bothered a police officer. *See Walker*, 414 F.3d at 993.

11

As in *Walker*, Mr. Whitt was silent until he himself was disturbed: he only spoke to police after they approached him. *See* Defs' SUF, ¶ 11.

Simply, the Defendant Officers attempt to differentiate this case from the facts in *Walker* not so much by pointing to different facts but by disguising a series of conclusory statements as facts: the arrestee in *Walker* was not standing in a crime scene but Mr. Whitt was; the arrestee in *Walker* did not hinder the officers' investigation but Mr. Whitt did. But these "facts" are all controverted. Properly understood, the facts of *Walker*, decided in 2005, and those of Mr. Whitt's arrest in 2016 are so similar that Mr. Whitt's right to record police officers without disturbing them was clearly established at the time of his arrest. Combined with extensive law from outside the Eighth Circuit, the Defendant Officers cannot credibly claim they were unaware of Mr. Whitt's rights.

    **b.** ***Defendants' search of Mr. Whitt's camcorder violated his clearly established rights.***

Like Mr. Whitt's arrest, the search of his camcorder lacked probable cause. Specifically, Linhorst could not reasonably have believed that the allegations he made in the affidavit he submitted in support of the warrant application. Given that, "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (quoting *Malley v. Briggs*, 475 U.S. 335, 341) (internal quotation marks omitted).

    i. <u>There was no probable cause to believe Mr. Whitt had committed a crime.</u>

Linhorst was at the scene when Mr. Whitt was arrested, so he knew or should have known that Mr. Whitt had not committed the offense of interfering with officers. As demonstrated above, the Defendant Officers had no probable cause to believe that Mr. Whitt had committed a crime. No matter what he might have written in his affidavit, Linhorst—who knew that Mr. Whitt had

not committed a crime—was unreasonable in believing there was sufficient cause to believe a crime had been committed, meaning there was no probable cause to search Mr. Whitt's camcorder for evidence.

      ii.   Mr. Whitt's rights were clearly established.

The Defendant officers are correct that the fact that a judge signed the warrant is the "clearest indication that the officers acted in an objectively reasonable manner." *See Messerschmidt*, 565 U.S. at 546. However, "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Id.* at 547. This protection does not apply if "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id.* (quoting *Malley*, 475 U.S. at 341) (internal quotation marks omitted).

In *Messerschmidt*, the Supreme Court held that officers were entitled to qualified immunity with regard to their allegedly illegal search of a criminal subject's home after he allegedly fired a sawed-off shotgun at another person. There the issue was not whether there was probable cause for the warrant to issue in the first place, but whether the warrant had granted overly-broad authority to search the home. *See Id.* at 544. The Court assumed that the warrant had *not* been supported by probable cause, and examined whether the officers were entitled to qualified immunity for conducting the search despite that. *Id.* at 546.

The court places the responsibility of determining whether probable cause exists for the search on the magistrate considering the warrant. "[I]n the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination, because it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.* at 547

(quoting *United States v. Leon*, 468 U.S. 897, 921 (1984)) (internal quotation marks omitted). However, an officer can no longer hide behind the magistrate's issuance of a warrant when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *Leon*, 468 U.S. at 923) (internal quotation marks omitted).

This is not an ordinary case. Here, there is no possibility that Linhorst believed that his affidavit had sufficient indicia of probable cause to warrant a search Mr. Whitt's camcorder. As demonstrated above, Linhorst had no probable cause to believe that Mr. Whitt had committed any crime in the first place. *See* Sec. I(a), *supra*. Therefore, Linhorst, knowing that any indicia of probable cause in the affidavit were not accurate, could not possibly have reasonably relied on the magistrate's determination that such indicia existed. To hold otherwise would be to endorse Linhorst's tactic of putting false information in an affidavit, obtaining a warrant based on that false information, and then claiming that, because a judge signed the warrant, he could not possibly have known it was issued without probable cause.

Linhorst's reliance on the warrant was unreasonable. Therefore he is not entitled to qualified immunity with regard to his search of Mr. Whitt's camcorder.

### c. The Defendant officers retaliated against Mr. Whitt for exercising his First Amendment right to record them.

As the Defendant Officers concede, only two prongs of the test for whether the Officers retaliated against Mr. Whitt for exercising his First Amendment rights are at issue here. *See* Doc. 95 at 16. At the summary judgment stage, Mr. Whitt need not demonstrate conclusively that the final two prongs have been met. He is only required to show that questions of fact exist such that a reasonable fact-finder could find that they have been met. Mr. Whitt is able to do so with regard to the first element, that the arrest lacked probable cause, because as of Mr. Whitt's arrest the Eighth Circuit had "never recognized a First Amendment right to be free from a retaliatory arrest

14

that is supported by probable cause ….ated." *McCabe v. Parker*, 608 F.3d 1068, 1078-79 (8th Cir. 2010). Mr. Whitt can also show (or present sufficient evidence that a fact-finder could find) that the arrest was motivated by his exercise of his First Amendment rights, satisfying the second prong.

      i.   The arrest lacked probable cause

As demonstrated above in section I(a)(i), the Defendant Officers lacked probable cause to arrest Mr. Whitt. Briefly, "no reasonable officer could conclude that a citizen's passive observation of a police-citizen interaction from a distance was criminal." *Chestnut*, 947 F.3d at 1090. Because it would have been clear to any reasonable officer that Mr. Whitt was not interfering with police activity, there was no probable cause for his arrest.

      ii.   The arrest was motivated by Mr. Whitt's protected activity.

The Defendant Officers naturally deny that their arrest of Mr. Whitt was motivated by his exercise of his First Amendment right to record them in public. The Officers state unequivocally that Mr. Whitt's arrest "was motivated by his interference at a crime scene …." Defs' Memo at 16. But this, again, begs the question of whether Mr. Whitt was, in fact, interfering with the officers. Because he was not, there are facts that could lead a reasonable jury to conclude that Mr. Whitt's arrest was motivated by his exercise of his First Amendment right to record police in public.

Linhorst knew Mr. Whitt frequently recorded police activity before he encountered Mr. Whitt that day. Mr. Whitt testified that Linhorst had threatened to arrest him while he was recording police at a different scene within six or seven months before the incident in question here. *See* Resp. to Defs' SUF, ¶ 7. Linhorst had also threatened to take Mr. Whitt's camera before and had indicated to Mr. Whitt that Linhorst was "not really too cool on people filming the scene

15

and stuff." *Id*. Linhorst testified that he had never met Mr. Whitt prior to the incident in question. *See* Defs' SUF, ¶ 7. Similarly, testimony of the two also disagrees on whether Linhorst encountered Mr. Whitt *after* the incident in question here. Linhorst testified that he had come across Mr. Whitt on multiple occasions since the incident in question. Pl's SUF , ¶ 16. Mr. Whitt testified that they had not seen each other since. Pl's SUF, ¶ 17. Viewing these conflicting assertions in the light most favorable to Mr. Whitt, a reasonable fact-finder could conclude that Linhorst did, in fact, recognize Mr. Whitt as a person who frequently recorded police activity. And that lends support to the idea that Linhorst was acting based on Mr. Whitt's exercise of his right to record police when he arrested him.

Linhorst's actions on the scene that day also give rise to a reasonable inference that he was motivated by Mr. Whitt's exercise of his right to record. When Linhorst pulled his police vehicle up within a few feet of Mr. Whitt, Mr. Whitt's view of police activity was obstructed. Pl's SUF, ¶ 12. Linhorst had positioned the vehicle in such a way that, even if Mr. Whitt backed up even further, he would not have been able to see or record the police activity. *Id.* This was part of a pattern of obstruction and threats Mr. Whitt had experienced while recording police activity in the past. Pl's SUF, ¶ 18. Given Linhorst's history with Mr. Whitt, his decision to park his vehicle in such a way that it obstructed Mr. Whitt's line-of-sight and the fact that this action was part of a pattern all could lead a reasonable jury to determine that Linhorst was acting deliberately to frustrate Mr. Whitt's ability to record the police, i.e. Linhorst's actions were motivated by the fact that Mr. Whitt was exercising his First Amendment rights.

## II.   The Defendant Officers are not entitled to summary judgment on Mr. Whitt's state-law false arrest claim.

The Defendant Officers argue that they are entitled to official immunity on Mr. Whitt's state law claims because, even if their arrest of Mr. Whitt lacked probable cause, they reasonably

believed that probable cause existed. But in fact a reasonable finder-of-fact could determine, based on the evidence, that the officers knew there was no probable cause and arrested Mr. Whitt in bad faith.

### a. *The arrest lacked probable cause.*

Mr. Whitt must demonstrate that his arrest was illegal, i.e., made without probable cause, as an element of his state-law false arrest claim (Count VI). Doing so, in itself, would demonstrate that he had been falsely arrested. "The essence of the cause of action for false arrest … is a person's confinement of the plaintiff, without legal justification." *Rankin v. Venator Group Retail, Inc.*, 93 S.W.3d 814, 819 (Mo. App. E.D. 2002). Mr. Whitt must also demonstrate that the officers acted in bad faith or with malice, in order to overcome their claim of official immunity. *See, e.g., State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986).

As demonstrated above, Mr. Whitt's arrest lacked probable cause. *See* Sec. I(a), *supra*. The remaining question, then, is whether the Defendant Officers acted with malice. Because a jury could believe the Defendant Officers acted with malice in arresting Mr. Whitt, Mr. Whitt's state-law claim should survive summary judgment.

### b. *There is evidence of malice on the part of the officers.*

With regard to whether the officers are entitled to qualified immunity on Mr. Whitt's false arrest claim, "[a] finding of malice requires conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or any improper or wrongful motive." *Wealot v. Brooks*, 865 F.3d 1119, 1129 (quoting *Twiehaus*, 706 S.W.2d at 447) (internal quotation marks omitted). Given the demonstration above that the officers lacked probable cause to believe Mr. Whitt had committed a crime and Mr. Whitt's established

reputation as a cop-watcher, and construing the facts in Mr. Whitt's favor, a reasonable fact-finder could infer from the officers' actions that they were acting in bad faith.

## CONCLUSION

The Defendant Officers have not met their burden with regard to Mr. Whitt's remaining claims, and therefore those claims should survive summary judgment. The Defendant Officers have not demonstrated that they had probable cause to arrest Mr. Whitt. As demonstrated above, reasonable officers would have known that there was no probable cause to believe Mr. Whitt was violating the interfering ordinance. Similarly, the Defendant Officers have not demonstrated that there was probable cause for them to search Mr. Whitt's camcorder. Evidence of the officers' actions at the scene would allow a reasonable fact-finder to determine that the officers' arrest of Mr. Whitt was motivated by his recording them, an activity that is protected by the First Amendment.

Because a reasonable fact-finder could conclude that Mr. Whitt's arrest was unconstitutional, his remaining claims against the Defendant Officers should be allowed to proceed. The fact-finder should be given the opportunity to find the truth—any dismissal at this stage would be premature.

Dated: March 15, 2021                            Respectfully submitted,

                                              RODERICK AND SOLANGE
                                              MACARTHUR JUSTICE CENTER

                                              By: /s/  W. Patrick Mobley
                                              Amy E. Breihan, #65499MO
                                              Megan G. Crane, #71624MO
                                              W. Patrick Mobley, #63636MO
                                              3115 South Grand Blvd., Suite 300
                                              St. Louis, MO 63118
                                              Phone: (314) 254-8540
                                              Fax: (314) 254-8547
                                              amy.breihan@macarthurjustice.org
                                              megan.crane@macarthurjustice.org

                                              pat.mobley@macarthurjustice.org

                                              *Attorneys for Plaintiff David Whitt*