## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| DAVID WHITT, | ) |
| Plaintiff, | ) ) ) |
| | ) Cause No. 4:18-CV-1294 |
| CITY OF ST. LOUIS, *et al*. | ) ) ) |
| Defendants. | ) ) ) |

### DEFENDANTS RYAN LINHORST, MATTHEW KARNOWSKI, AND MATTHEW SHAW'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Ryan Linhorst, Matthew Karnowski, and Matthew Shaw (collectively "Defendants"), and for their reply in support of their motion for summary judgment state as follows:

After the moving party discharges their burden of informing the court of the basis of their motion and identifies those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which they believe demonstrate the absence of a genuine issue of material fact, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to withstand the motion for summary judgment, the nonmoving party must substantiate his allegations with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992). If the evidence is not significantly probative, the state officials are entitled to summary judgment as a matter of law. *Anderson*, 477 U.S. at 248-52. Here, Plaintiff has failed to provide this Court with sufficiently probative evidence that would permit a finding in his favor, and thus,

1

Defendants Linhorst, Karnowski, and Shaw remain entitled to summary judgment on all remaining counts (Counts I, II, III, IV & VI).[1]

## ARGUMENTS IN REPLY

1. **Defendants' Statement of Uncontroverted Material Facts should be deemed admitted as Plaintiff failed to controvert said facts.**

Plaintiff has not complied with Federal Rule of Civil Procedure 56(c)(1) or Eastern District of Missouri Local Rule 4.01(E) governing summary judgment motions.  Specifically, although Defendants properly submitted a Statement of Undisputed Material Facts ("SUMF") in support of their motion for summary judgment, Doc. 93, Plaintiff failed to respond to Defendants' SUMF. Federal Rule of Civil Procedure 56(c)(1) provides in pertinent part that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulation (including those made for purposes of the motion only), admission, interrogatory answers or other materials."  If the opposing party fails to properly controvert a movant's statement of material fact, such statement "will be deemed admitted for the purposes of the motion." Fed. R. Civ. P. 56(c)(1).

Likewise, under the local rules of this Court, all matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment *unless specifically controverted* by the opposing party.  *See* E.D. Mo. L.R. 4.01(E) (emphasis added). To specifically controvert a statement of fact, the non-moving party "shall note for all disputed facts the paragraph number from movant's listing of facts." *Id*.

---

[1] On March 16, 2020, this Court granted the parties' joint stipulation to dismiss all claims against Defendants Bobby Baine and the City of St. Louis with prejudice.  (Doc. 100).  Hence, only claims against Defendants Linhorst, Karnowski, and Shaw remain.

This Court should consider Defendants' facts admitted for purposes of Defendants' motion for summary judgment. Because Plaintiff has not controverted the facts set forth in Defendants' SUMF, the SUMF should be deemed admitted by Plaintiff in its entirety. *See Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 991 (8th Cir. 2006) (district court properly deemed facts admitted that were not properly controverted); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); *see also Turner v. Shinseki*, No. 4:08-CV-1910 CAS, 2010 U.S. Dist. LEXIS 62067, at *1 (E.D. Mo. June 22, 2010) (SUMF deemed admitted when plaintiff failed to respond). In addition, Plaintiff has not provided the Court with an additional statement of material facts as to which he contends preclude summary judgment in favor of Defendants. Accordingly, this Court should accept Defendants' SUMF as admitted for the purposes of this motion.

2. **Defendants remain entitled to qualified immunity as to Plaintiff's arrest.**

   a. <u>Defendants had probable cause, and certainly arguable probable cause, to arrest Plaintiff for interfering, and even if they did not, it was not clearly established at the time that arresting Plaintiff was a violation of his Fourth Amendment rights.</u>

      i. Defendants had probable cause, and certainly arguable probable cause, to arrest Plaintiff.

In support of his argument that Defendants lacked probable cause to arrest him, Plaintiff cites to *Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020). However, *Chestnut* is distinguishable from the facts here in several key ways and Plaintiff's reliance on *Chestnut* is misplaced. First, the observing citizen in *Chestnut* was standing across the street and thirty to forty feet away from police officers, *id.* at 1087, whereas here, by all accounts of individuals at the scene that day, Plaintiff was standing fifteen to twenty feet from the stolen vehicle being investigated and ten feet

3

away from police officers (UMF #10).  Second, in *Chestnut* there was no concern about evidence being spoiled where the citizen was standing, whereas here, Defendants were concerned that Plaintiff's presence might compromise evidence that was abandoned from the fleeing suspects. (UMF #58).  Third, the citizen in *Chestnut* was never instructed to back up or told that he was in the officers' work space; here, on the other hand, Plaintiff was commanded and refused to back up ten times and was told twice that he was in the officers' work space.  (UMF #11, 14, 16, 18, 21, 23, 25, 27, 32, 34, 36).  And fourth, there was no suspect at-large in *Chestnut* as there was here. (UMF #3).  Based on these key factual distinctions, *Chestnut* does not stand for the proposition that there was no arguable probable cause to arrest Plaintiff under the circumstances of this case.

Plaintiff distinguishes *City of St. Louis v. Jones*, 536 S.W.3d 794 (Mo. App. 2018) to suggest that a person interferes only when he makes physical contact with police officers.  Not so. It is not necessary to show that there has been use of violence or force in order to constitute an offense of interfering, hindering or obstructing.  *City of St. Louis v. Evans*, 337 S.W.2d 948, 954 (Mo. 1960).  Where the evidence establishes that the defendant's words and refusal to cooperate prevented an official from carrying out his official duties, such evidence is sufficient to show "hindrance, obstruction, resistance, and interference."  *Id.*  Arguing with a police officer has been held to constitute illegal interference.  *Perkins v. Wilcox*, 242 S.W. 974 (Mo. 1922).  Here, while Plaintiff did not make physical contact with Defendants, Plaintiff's presence in a crime scene, his persistent refusal to cooperate with reasonable commands, and his arguing with police officers, hindered, obstructed, and interfered with Defendants' ability to carry out their duties.  And thus, Defendants had at least arguable probable cause to arrest Plaintiff.

Contrary to Plaintiff's arguments, Defendants actions on the day in question are consistent with their objectively reasonable belief that Plaintiff could compromise evidence and was a

4

possible threat to officer safety.  Plaintiff argues that because officers did not prevent him from riding his bike down the street where the stolen vehicle and police were located, the police could not have reasonably thought that Plaintiff was a threat to their safety or to the preservation of evidence.  However, uncontroverted evidence shows that the border of the crime scene was within approximately fifty feet of the stolen vehicle.  (UMF #42).  Although it may have been ideal for officers to have informed Plaintiff of his presence at a crime scene at the first possible point in which he nters the crime scene, their failure to do so does not invalidate that Plaintiff was, in fact, in a crime scene, and that there were reasonable concerns that his presence in said crime scene would compromise and spoil evidence.  Notably, when Plaintiff initially arrives at the crime scene, police officers are otherwise engaged in their duties – one officer is seen speaking to a fellow officer; a second officer is seen speaking to a suspect.  (Ex. C, 0:39-0:45).  Plaintiff offers no support for his assertion that Defendants lacked arguable probable cause to arrest him because he was not told at the earliest point of his entrance into a crime scene that his presence was a problem, and thus, his assertion lacks merit.

Concerns for officer safety became an issue when Plaintiff refused multiple police commands to back up from the scene, and he began to argue with Defendants.  Linhorst explains that he grew suspicious why Plaintiff, after multiple commands to back up, insisted on standing so close to the scene when Linhorst recognized that Plaintiff's camcorder has zooming capabilities, and determined Plaintiff may be a threat to officer safety.  (UMF #20).  Karnowski and Shaw also had concerns for officer safety once Plaintiff refused their reasonable commands.  (UMF #59).  The belief that Plaintiff could pose a threat to officer safety was objectively reasonable as evidenced by the testimony of Officer Armstead, Defendants' non-retained expert, who explained

5

that he also would have been concerned for officer safety if he were in Defendants' position that day. (Ex. E, Armstead Depo, 54:11-55:1).

Plaintiff argues that the video evidence does not show that police were investigating a crime on the day in question. Not so. At 0:29 of the video, at least two police vehicles are seen in the middle of the road. (Ex. C). Two officers are outside their cars; one officer is seen speaking to a suspect. (Ex. C, 0:39-0:45). At 1:37-1:38 of the video, Linhorst approaches Plaintiff and tells him to back up because he is in a crime scene. (Ex. C). We know from officer testimony that this crime involved fleeing suspects and that it is common for suspects to abandon evidence while fleeing, therefore, a crime scene involving fleeing suspects is often expanded broadly until the police are able to assess where relevant evidence is located. (UMF #1, 9). At 2:47-2:48, Karnowski and Shaw tell Plaintiff that he is in their workspace. (Ex. C). At 2:11, 2:17, 2:35, 2:43-45, multiple officers are seen in the background of Plaintiff's video near the stolen vehicle and looking into the windows of the stolen vehicle. (Ex. C). At 2:22-2:24, also in the background, officers are seen speaking with a witness. (Ex. C). Query what additional context Plaintiff or his expert would require to determine an investigation was ongoing.

Based on the above, it was objectively reasonable for Defendants to believe that Plaintiff was in a crime scene, that his presence in the crime scene could compromise evidence, and that his refusal to comply with reasonable commands and arguing with police officers was a potential threat to officer safety, thereby providing at least arguable probable cause for Plaintiff's arrest.

     ii. It was not clearly established at the time that Plaintiff's arrest was a violation of the Fourth Amendment.

As Plaintiff notes, the Eighth Circuit recently analyzed the "clearly established" prong in *Bell v. Neukirch*, 979 F.3d 594 (8th Cir. 2020). In so doing, the Eighth Circuit re-affirmed existing precedent regarding the "clearly established" prong. "Clearly established means that, at the time

6

of the officer's conduct, the law was sufficiently clear that *every* reasonable officer would understand what he is doing is unlawful." *Id*. at 606 (emphasis added) (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). For a right to be clearly established, "existing law must have placed the constitutionality of the officer's conduct beyond debate." *Id.* (citing *Wesby*, 138 S. Ct. at 589). The "legal principle must have a sufficiently clear foundation in then-existing precedent." *Id.* (citing *Wesby*, 138 S. Ct. at 590). "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* Then-existing "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know." *Id.* 606-07. In the context of the Fourth Amendment, "the specificity of the rule is especially important." *Id.* at 607.

In analyzing Plaintiff's Fourth Amendment rights, Plaintiff argues that his First Amendment rights were clearly established. Defendants are not contesting that Plaintiff has a right to record police activity. Said right is acknowledged by the St. Louis Metropolitan Police Department Special Order 1-06, and was acknowledged by Defendant Karnowski on the day of Plaintiff's arrest when Karnowski assured Plaintiff twice that he "can record all [he] want[s]." Instead, at issue here, is Plaintiff's interference at a crime scene.

Plaintiff has not, and cannot, point to a case where a civilian's arrest was found unconstitutional where the facts of that civilian's arrest entailed the following: civilian was standing in an active crime scene; civilian was standing fifteen to twenty feet away from the stolen vehicle which was the subject of an investigation; civilian was standing ten feet away from police officers; civilian's presence near the stolen vehicle could have compromised evidence from fleeing suspects; a suspect was at-large; civilian refused *ten* reasonable police commands to back up;

7

civilian argued with officers after being instructed to back up; civilian was told he was in the officers' work space and persisted in his refusal to back up; civilian's refusal to comply with officer commands reasonably caused officers to become concerned for their safety.  Because Plaintiff cannot point to then-existing precedent with regard to the specific facts of Plaintiff's arrest, Defendants' arrest of Plaintiff is not "beyond debate" or such that "every reasonable officer would understand what [Defendants' did was] unlawful."  Thus, it was not clearly established at the time that Plaintiff's arrest was a violation of his Fourth Amendment rights.

Defendants will not repeat the many ways in which *Walker v. City of Pine Bluff*, 414 F.3d 989 (8th Cir. 2005), differs from this case, as such has already been discussed in their memorandum of law.  Notably, the circumstances in *Walker* involved a traffic stop, not a crime scene.  *Id.* at 991.  In *Walker*, there was no at-large suspect, no potential for *Walker* to compromise evidence, no uncontroverted evidence that *Walker* refused police commands, or any reasonable threat to officer safety.  *See id.* at 992.  As Plaintiff appears to interpret *Walker*, a citizen could be standing directly beside a homicide victim in the middle of a crime scene, and as long as their observations of police are "passive," the police could do nothing to remove the citizen.  Such an interpretation of *Walker* is nonsensical.

In sum, Defendants had at least arguable probable cause to arrest Plaintiff, and it was not clearly established at the time that Plaintiff's arrest was a violation of his Fourth Amendment rights, and so Defendants remain entitled to qualified immunity as to Plaintiff's arrest.

**3. Defendants remain entitled to qualified immunity as to the search of Plaintiff's camcorder.**

In response to the validly executed search warrant of Plaintiff's camcorder, Plaintiff alleges, without support, that "there is no possibility that Linhorst believed that his affidavit had sufficient indicia of probable cause to warrant a search of Mr. Whitt's camcorder."  (Doc. 101,

8

*14). The affidavit and its "indicia of probable cause" speak for itself, and is before this Court as Exhibit H. In the affidavit, Linhorst describes that on the day in question he was investigating a stolen vehicle, that Plaintiff interfered with said investigation, and that while Plaintiff was interfering he was documenting his interaction with police on a video recording device. (UMF #47). Plaintiff offers no evidence beyond mere conjecture and speculation that Linhorst did not believe his affidavit had sufficient indicia of probable cause to warrant a search of Plaintiff's camcorder. Linhorst confirms that he reasonably believed he had probable cause to search Plaintiff's camcorder. (Ex. D at 47:9-12). A judge signed the warrant, thereby finding probable cause for the search of Plaintiff's camcorder. (Ex. H at *4). Probable cause to search the camcorder is further evidenced by the fact that the video retrieved from Plaintiff's camcorder, submitted to this Court as Exhibit C, in fact depicts Plaintiff's interference. Hence, the search of Plaintiff's camcorder was not unlawful, and Defendants are entitled to qualified immunity on this point.

4. **Defendants remain entitled to qualified immunity as to Plaintiff's First Amendment claims.**

Here again Plaintiff offers only conjecture and speculation, but no probative evidence, that Plaintiff's arrest was retaliatory. Plaintiff alleges that because Linhorst may or may not have interacted with Plaintiff before or after his arrest, that "a reasonable fact-finder could conclude that Linhorst did, in fact, recognize Mr. Whitt as a person who frequently recorded police activity" and that "Linhorst was acting based on Mr. Whitt's exercise of his right to record police when he arrested him." (Doc. 101 at *16). Notably, Plaintiff makes these allegations against Linhorst only, and not against Defendants Karnowski and Shaw, therefore, Defendants Karnowski and Shaw are entitled to qualified immunity on this point. Even still, the retaliatory animus of this First

9

Amendment claim requires so much more than Linhorst recognizing Plaintiff as a person who frequently engages in First Amendment activity.

To show that Plaintiff's arrest was motivated at least in part by the protected activity, Plaintiff must demonstrate sufficient probative evidence that the retaliatory motive was a "substantial factor" or "but-for cause" of his arrest. *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014). In other words, Plaintiff must show he was "singled out because of [his] exercise of constitutional rights." *Id*. Plaintiff is unable to make this showing, however, for several reasons. First, two other civilians near the scene that day – one observing police activity from across the street and forty to fifty feet away, and another, Plaintiff's friend, Mr. Crawford, who was video recording police activity – were not arrested that day. (UMF #43, 44). If Linhorst harbored a retaliatory animus toward those who record police activity, as Plaintiff suggests, then Mr. Crawford would have also been arrested that day. But Mr. Crawford was not arrested that day, thereby evidencing that Plaintiff's arrest was motivated by his interference at a crime scene, and not by his recording of police activity.

Second, prior to arriving to the scene of the stolen vehicle, Plaintiff had been recording police at a different location, and was not arrested at that location. (Ex. B at 45:11-48:4). If Defendants intended to single out Plaintiff for recording police activity, then surely, they would have arrested Plaintiff at the first sight of him recording their activity, which they did not do. Thirdly, Plaintiff provides no support for his argument that Linhorst drove his police car in front of the stolen vehicle as part of an obstructionist pattern to deprive Plaintiff of his right to record the police. Plaintiff did not ask Linhorst at his deposition why he moved his police car in front of the stolen vehicle, *see* Ex. D, therefore, any allegation as to why Linhorst moved his police car is merely speculation and should be disregarded. Finally, Plaintiff's general rationale on this point

10

is flawed in that, if carried to its logical conclusion, would mean that an arrest of any person known by the police for exercising First Amendment rights is ipso facto retaliation, and that is not the law. *See Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012) (affirming qualified immunity for officers who arrested well-known civil rights activist for disrupting School Board meeting because the plaintiff provided no evidence the officers' actions were motivated by retaliatory animus of the plaintiff's First Amendment activity). Hence, Defendants remain entitled to qualified immunity as to Plaintiff's First Amendment claims.

5. **Defendants remain entitled to qualified immunity as to Plaintiff's state law claim of false arrest.[2]**

Again, Plaintiff speculates that the officers arrested Plaintiff with malice and bad faith because of Plaintiff's self-professed "reputation as a cop-watcher." Notably, each Defendant testified that they were not familiar with Plaintiff on the day of his arrest. (UMF #7). Even accepting Plaintiff's reputation as true, his having said reputation does not allow him to operate with legal impunity. If this were the case, no well-known police observer would ever be subject to the rule of law. Malice and bad faith are not determined by the reputation of the arrestee; instead, "[a]cting with malice requires an "actual intent to cause injury," and a finding of bad faith "embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive." *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (citing *Twiehaus*, 706 S.W.2d at 447). Plaintiff has not, and cannot, provide any evidence to show that Defendants had an actual intent to cause injury to Plaintiff or that they had a dishonest purpose in arresting Plaintiff. Therefore, Defendants are

---

[2] On March 16, 2020, this Court granted the parties' joint stipulation to dismiss Plaintiff's state law claim of malicious prosecution (Count VII). (Doc. 100). Hence, Plaintiff's false arrest claim is the only state law claim that remains.

entitled to summary judgment as to Plaintiff's state law claim of false arrest (Count VI) because Plaintiff's arrest was lawful and the officers are entitled to official immunity.

## CONCLUSION

In sum, Defendants Linhorst, Karnowski, and Shaw remain entitled to summary judgment on all counts of Plaintiff's Amended Complaint because: 1) Defendants' Statement of Uncontroverted Material Facts are deemed admitted as Plaintiff failed to controvert said facts; 2) Defendants are entitled to qualified immunity as to Plaintiff's arrest because they had at least arguable probable cause to arrest Plaintiff and it was not clearly established at the time that Plaintiff's arrest violated the Fourth Amendment; 3) Defendants are entitled to qualified immunity as to the search of Plaintiff's camcorder because the search warrant provides sufficient indicia of probable cause and was signed by a judge; 4) Defendants are entitled to qualified immunity because Plaintiff can show no evidence to support that his arrest was in retaliation of his recording the police; and 5) Plaintiff has failed to produce any probative evidence of malice or bad faith to support his state law claim of false arrest.  Therefore, Defendants request this Honorable Court enter judgment for them, and against Plaintiff, in this matter on all counts with prejudice.

Respectfully Submitted,

MICHAEL GARVIN
CITY COUNSELOR

By: /s/ Abby Duncan
Abby Duncan #67766MO
Erin K. McGowan #64020MO
1200 Market Street, Room 314
City Hall
St. Louis, Mo  63103
(314) 622-4694
(314) 622-4956 fax
DuncanA@stlouis-mo.gov
McGowanE@stlouis-mo.gov
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

    I hereby certify the foregoing was electronically filed on March 29, 2021, with the Court for service by means of Notice of Electronic Filing upon all attorneys of record.

/s/ Abby Duncan