# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| DAVID WHITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-1294 RLW |
| | ) | |
| CITY OF ST. LOUIS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on remaining Defendants Ryan Linhorst, Matthew Karnowski, and Matthew Shaw's Motion for Summary Judgment. (ECF No. 91). Plaintiff David Whitt opposes the Motion and it is fully briefed.

Plaintiff is a founding member of the St. Louis Chapter of WeCopWatch, an organization that seeks to deter aggressive and illegal police activity. He brings this action under 42 U.S.C. § 1983 and state law against officers from the St. Louis Metropolitan Police Department who arrested him on August 6, 2016.[1] For the following reasons, the Court will grant Defendants' Motion for Summary Judgment.

---

[1] In his Amended Complaint, Plaintiff named as defendants the City of St. Louis, Ryan J. Linhorst, Matthew J. Karnowski, Matthew A. Shaw, Bobby B. Baine, and John Does 1-3. (ECF No. 38). On October 16, 2018, Defendants Linhorst and Baine moved to dismiss Count VIII of the Amended Complaint. (ECF No. 47). The Court granted the motion on August 14, 2019 and denied all other pending motions to dismiss. (ECF No. 53). After the present motion was filed, the parties entered a Joint Stipulation of Dismissal as to Counts V and VII. (ECF No. 98). The parties also agreed to dismiss all counts against Defendant Baine. *Id.* The dismissal of Count V terminated Plaintiff's claims against the City of St. Louis. As for John Does 1-3, Plaintiff has not named or served any additional parties and these placeholder defendants will be dismissed. Thus, Counts I, II, III, and VI remain against Defendants Karnowski, Shaw, and Linhorst, and Count IV also remains against Defendant Linhorst.

**Legal Standard**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id*. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "The nonmoving party may not rely on allegations or denials" but rather "must substantiate [his] allegations with sufficient probative evidence that would permit a finding in [his] favor on more than mere speculation or conjecture." *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting *Ball v. City of Lincoln, Neb.*, 870 F.3d 722, 727 (8th Cir. 2017)). "Small factual disputes about the underlying events . . . could only create the 'metaphysical' kind of doubt that the Supreme Court decried in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)." *Main v. Ozark Health, Inc.*, 959 F.3d 319, 327 (8th Cir. 2020) (cited case omitted).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)).

## Facts

Generally, on a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Irving v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009) (citing *Thomas v. Union Pac. R.R. Co.*, 308 F.3d 891, 893 (8th Cir. 2002)). Here, however, Plaintiff failed to respond to Defendants' Statement of Uncontroverted Material Facts as required by Local Rule 4.01(E), which states in relevant part:

> Every memorandum in opposition must be accompanied by a document titled Response to Statement of Material Facts, which must be separately filed using the filing event "Response to Statement of Material Facts." The Response must set forth each relevant fact as to which the party contends a genuine issue exists. The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts.

E.D.Mo. L.R. 4.01(E). The penalty for failing to follow the rule is clear: "All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." *Id*.

Although Plaintiff's opposition refers to his own statement of material facts, he neither filed a separate response to Defendants' Statement of Uncontroverted Material Facts nor sought

leave of this Court to do so after Defendants' Reply pointed out the omission. Thus, all matters set forth in Defendants' Statement of Uncontroverted Material Facts are deemed admitted for purposes of summary judgment. E.D.Mo. L.R. 4.01(E); *see Roe v. St. Louis Univ.,* 746 F.3d 874, 881 (8th Cir. 2014) (if the opposing party does not raise objections to a movant's statement of facts as required by Local Rule 4.01(E), "a district court will not abuse its discretion by admitting the movant's facts."); *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 579 (8th Cir. 2006) (district court did not abuse its discretion in deeming facts set forth in moving party's summary judgment motion admitted under E.D. Mo. Local Rule 4.01(E) where no timely response was filed); *Ridpath v. Pederson*, 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material facts, it was deemed admitted under E.D.Mo. Local Rule 4.01(E)). Accordingly, the following facts are taken largely from Defendants' Statement of Uncontroverted Material Facts and the Court's own review of Plaintiff's video recording.

On August 8, 2016, officers from the St. Louis Metropolitan Police Department responded to a call about five suspects fleeing from a stolen minivan. (ECF No. 93, Defs.' SUMF ¶ 7). While the officers were able to apprehend some of the suspects, at least one remained at large. *Id.* at ¶ 3. After pursuing various suspects, the officers convened at the site of the stolen vehicle at the 5000 block of Wells Avenue. *Id.* at ¶ 4. Plaintiff followed the officers to the site on his bicycle. *Id.* at ¶ 5. Defendants Linhorst, Karnowski, and Shaw were present at the scene. *Id.* at ¶ 7. Defendants were not familiar with Plaintiff or his involvement in WeCopWatch. *Id.* At the time of Plaintiff's arrival, the officers had not yet searched the stolen vehicle or canvassed the area for evidence. *Id.* at ¶ 8. Crime scenes involving fleeing suspects are often expanded broadly because it is common for fleeing suspects to abandon evidence. *Id.* at ¶ 9.

Plaintiff began filming the police activity upon his arrival at the 5000 block of Wells Avenue. (ECF No. 93-3, Defs.' Ex. C). Plaintiff cycled past a cluster of police vehicles and came to a stop within 15 to 20 feet of the stolen vehicle and within 10 feet of the nearest police vehicle. (ECF No. 93, Defs.' SUMF ¶ 10). At this point, Defendant Linhorst—from his police vehicle— told Plaintiff: "You gotta scoot back, man. We got a crime scene here. You gotta scoot back." (ECF No. 93-3, Defs.' Ex. C). Linhorst then pulled the vehicle between Plaintiff and another police vehicle that contained a suspect. *Id.* Linhorst testified at his deposition that the officers "were just trying to establish the crime scene, see if there was any other evidence[.]" (ECF No. 93-4, Defs.' Ex. D, Linhorst Dep. 26:16-17). Linhorst further testified that he was trying to create a "reactionary gap" and "didn't understand why [Plaintiff] had to be so close to us when he could clearly zoom in enough to get even closer than where he was standing[.]" *Id.* at 30:5-31:3. Linhorst felt Plaintiff could be a threat to officer safety. *Id.*

Plaintiff took a few steps back in response to Linhorst's directive. (ECF No. 93-3, Defs.' Ex. C). Linhorst again instructed Plaintiff to "scoot back." *Id.* Plaintiff stated, "Hey, I'm not interfering with y'alls crime scene. I'm back." *Id.* Linhorst instructed Plaintiff to move back "about another ten feet, man." *Id.* Plaintiff refused and stated, "I'm not interfering. Y'all got plenty of room. There's nothing over here." *Id.* Linhorst again told Plaintiff to move back another ten feet. *Id.* Plaintiff responded, "There's nothing over here. The cop [unintelligible] trying to tell me to back up right now. There's nothing going on right here. This looks like it's the car right here with no plates." *Id.*

At this point, Defendant Karnowski—a sergeant and the supervising officer on the scene (ECF No. 93-2, Defs.' Ex. B, Karnowski Dep. 14:5-18, 35:13-15)—approached Plaintiff and stated, "Sir, I need you to back up about 20 more feet for me. You can record but I just need you

to back up." *Id.* Plaintiff responded, "What's going on?" *Id.* Defendant Karnowski replied, "I just need you to back up, partner." *Id.* Plaintiff declined and explained, "I backed up already. I'm not interfering with y'all. Ain't nothing over here." *Id.* Defendant Karnowski again told Plaintiff to back up. *Id.* Plaintiff took a couple of steps back. Karnowski stated, "Back by that light post would be really good." *Id.* The light post was 10 to 15 feet behind Plaintiff. (ECF No. 93, Defs.' SUMF ¶ 30). Plaintiff stated, "There's nothing over here. I'm not interfering with y'alls crime scene." *Id.* Defendant Shaw then also approached Plaintiff. *Id.* Defendant Shaw told Plaintiff, "You're in our workspace." *Id.* Defendant Karnowski agreed, "You're in our workspace, man." *Id.* Plaintiff responded, "I'm in they workspace. There's nothing over here. We see I'm backing up a little bit more." *Id.* Plaintiff backed up a couple of steps. *Id.* Defendant Karnowski again asked Plaintiff to back up by the light post and added, "You can record all you want from right back there." *Id.* Plaintiff argued, "There is no set feet. Y'all got caution tape it's a different story. There's no crime over here." *Id.* Defendant Karnowski interrupted, "I'm telling you right now you're in danger of interfering right now, so you need to back up behind the light post." *Id.* Plaintiff ignored Defendant Karnowski's instructions and instead proceeded to describe the scene for his recording. *Id.* Defendants Karnowski, Shaw, and Linhorst then arrested Plaintiff. (ECF No. 93-4, Defs.' Ex. D, Linhorst Dep. 34:20-22, 35:2-4).

Defendant Karnowski testified at his deposition that he believed Plaintiff "was hindering our investigation" and was "drawing our attention away from our suspects, and then our investigation." (ECF No. 93-2, Defs.' Ex. B, Karnowski Dep. 52:9-12). Defendant Karnowski also testified that he was concerned Plaintiff would contaminate evidence. *Id*. at 43:23-44:2. Defendant Shaw testified he considered the border of the crime scene to be "probably 50 feet from the [stolen]

minivan." (ECF No. 93-1, Defs.' Ex. A, Shaw Dep. 36:11-15). Defendant Shaw further testified

that he believed Plaintiff was in his workspace because the officers

> had just responded back to [the stolen vehicle], since we had all been
> spread out, we had not properly secured the scene yet, we had not
> . . . I don't even think we had searched the vehicle yet or the
> surrounding areas where those, where the subject had fled. It's still
> an unfolding scene, the, you know, typically on scenes like this
> weapons or contraband could be left behind, whether in the path of
> where the suspects fled or in the vehicle, itself.

(ECF No. 93-1, Defs.' Ex. A, Shaw Dep. 29:8-17). Defendant Shaw also stated Plaintiff's repeated

refusals to move back diverted the officers' attention from the crime scene to Plaintiff. *Id.* at 30:15-

20. Defendant Linhorst testified that the Defendants were trying to establish a crime scene "in

order for us to be able to establish if there was any other evidence when the suspects ran from the

scene." (ECF No. 93-4, Defs.' Ex. D, Linhorst Dep. 26:16-21).

Plaintiff asserts that he "was taken in and held for about ten hours." (ECF No. 97-1, p. 3).

At least one other civilian observed the police activity from across the street, approximately 40 to

50 feet away. (ECF No. 93, Defs.' SUMF ¶ 43). Plaintiff's friend, Jacob Crawford, also filmed the

police activity near the scene. *Id.* at ¶ 44. While the Court cannot discern Crawford's exact location

from the record, Crawford testified at his deposition that he approached the police vehicles "trying

to figure out where [Whitt] was." (ECF No. 93-7, Defs.' Ex. G, Crawford Dep. 89:2-24).

Defendants did not arrest Crawford or the other civilian. (ECF No. 93, Defs.' SUMF ¶ 43, 44).

The officers seized Plaintiff's camcorder incident to the arrest for evidence of Plaintiff's

interference. (ECF No. 93, Defs.' SUMF ¶ 39). Defendant Linhorst drafted a warrant affidavit to

search the contents of the camcorder and a municipal judge signed the warrant on August 9, 2016.

*Id.* at ¶¶ 46, 49. The affidavit stated, in relevant part:

On August 8, 2016, I was in the 5000 block of Wells relative to an investigation involving a stolen vehicle. While on the scene, David Whitt interfered with our Tampering 1st investigation. While interfering, David Whitt was operating and filming, thus documenting, his interfering with the aforementioned video recording device he was in possession of. Based on information obtained throughout this investigation there is probable cause to believe that the above listed video camera contains evidence that David Whitt interfered with a police officer in the performance of their duty.

*Id.* at 47; ECF No. 93-8, Defs.' Ex. H.

On October 6, 2016, the City of St. Louis filed charges against Plaintiff for violation of St. Louis City Code § 15.10.010 (ECF No. 93, Defs.' SUMF ¶ 53), which states, in relevant part: "Whoever shall, in this City . . . hinder, obstruct, resist or otherwise interfere with any City officer in the discharge of his official duties . . . shall be deemed guilty of a misdemeanor." Plaintiff requested the return of his camcorder on December 26, 2016. (ECF No. 93, Defs.' SUMF ¶ 54). The Metropolitan Police Department returned the camcorder on January 4, 2017. *Id.* at ¶ 55. The City dismissed its action against Plaintiff on May 22, 2017. *Id.* at ¶ 56.

## Discussion

Defendants' Motion for Summary Judgment is based on qualified immunity, so it is necessary to review the qualified immunity standard before addressing the individual counts in Plaintiff's Amended Complaint.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional

or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Stark v. Lee Cnty.*, 993 F.3d 622, 625 (8th Cir. 2021) (citation omitted). The doctrine protects all but the plainly incompetent or those who knowingly violate the law. *Clayborn v. Struebing*, 734 F.3d 807, 808 (8th Cir. 2013) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Officers are allowed considerable room for mistaken judgments. *Id.* (citing *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011).

"To overcome [Defendants'] claim of qualified immunity, [Plaintiff] bears the burden of showing that the facts alleged, construed in the light most favorable to [Plaintiff] demonstrate the violation of a constitutional right that was clearly established at the time of the violation. *See Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016)." *Church v. Anderson*, 898 F.3d 830, 832 (8th Cir. 2018).

Finally, although the parties largely treat the defendants as a single entity throughout their filings—and the record is consequently light on details differentiating the actions of each defendant—the Court must nevertheless perform an individualized analysis for each defendant as to the alleged constitutional violations. *Manning v. Cotton*, 862 F.3d 663, 669 (8th Cir. 2017) (noting that a person may only be held liable for a constitutional violation if their own conduct violated a clearly established constitutional right). Despite the occasional lack of clarity in the record, the Court is able to conclude that no genuine issues exist as to each defendant's entitled to qualified immunity.

### A.    Unlawful Seizure/False Arrest (Count I)

In Count I, Plaintiff asserts that Defendants Karnowski, Shaw, and Linhorst deprived him of his right to be free from unreasonable seizure of his person and unlawful arrest in violation of

the Fourth and Fourteenth Amendments to the United States Constitution. Defendants move for summary judgment on the basis of qualified immunity.

To establish a violation of the Fourth Amendment in a § 1983 action, the plaintiff must demonstrate that a seizure occurred and that the seizure was unreasonable. *McRoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003). "A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "Although seizure requires restraint of an individual's liberty, not every government act resulting in a restraint of an individual's liberty constitutes a seizure." *Id.* at 846-47 (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989)). "Reasonableness of a seizure is determined by the totality of the circumstances and must be judged from the viewpoint of a reasonable officer on the scene, irrespective of the officer's underlying intent or motivation." *McRoy*, 342 F.3d at 848 (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Thurairajah v. City of Fort Smith, Ark.*, 925 F.3d 979, 983 (8th Cir. 2019) (citing *Borgman*, 646 F.3d at 522-23). "An officer possesses probable cause to effectuate a warrantless arrest when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Id.* (internal quotation marks omitted). Arguable probable cause exists if the arrest was "was based on an objectively reasonable—even if mistaken—belief that the arrest was based in *probable cause*." *Thurairajah*, 925 F.3d at 983 (quoting *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013)). When applied in a qualified immunity analysis, this standard gives officers "an even wider berth

for mistaken judgments than the probable cause standard affords a reasonable person." *Id.* (internal quotation marks omitted).

Defendants acknowledge that they seized and arrested Plaintiff. Defendants deny, however, that they violated Plaintiff's constitutional rights in doing so. Defendants assert that the arrest was proper because they had probable cause—or at least arguable probable cause—to arrest Plaintiff for a violation of St. Louis City Code § 15.10.010.

Section 15.10.010 provides, in relevant part: "Whoever shall, in this City . . . hinder, obstruct, resist or otherwise interfere with any City officer in the discharge of his official duties . . . shall be deemed guilty of a misdemeanor." Although the language of § 15.10.010 does not require proof of culpable state of mind, § 562.021.3 of the Revised Statutes of Missouri imputes upon it a requirement that an individual act purposely or knowingly. Mo. Rev. Stat. § 562.021.3 ("Except as provided in subsection 2 of this section and section 562.026, if the definition of any offense does not expressly prescribe a culpable mental state for any elements of the offense, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly; but reckless or criminally negligent acts do not establish such culpable mental state.")

Plaintiff argues that Defendants did not have probable cause—or even arguable probable cause—to make the arrest, citing *Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020). The Eighth Circuit in *Chestnut* determined that genuine issues of material fact precluded the officer from receiving qualified immunity because, when the facts were viewed in the light most favorable to the plaintiff, it was clearly unlawful for the officer to detain him. *Chestnut*, 947 F.3d at 1089-90. *Chestnut* is factually distinguishable from this case because it did not involve an active crime scene and the plaintiff was standing significantly farther away from the police activity.

The plaintiff in *Chestnut* was a jogger who followed and watched as a female officer performed two traffic stops in a public park. *Id.* at 1087. The plaintiff stood approximately thirty to forty feet from the scene during the second stop. *Id.* The officer noticed the plaintiff and radioed dispatch for assistance. *Id.* A second officer responded to the call and asked the plaintiff for a form of identification. *Id.* The plaintiff did not have identification on him, so the officer asked for his name, address, and social security number. *Id.* The plaintiff provided his name, date of birth, and only the last four digits of his social security number. *Id.* The officer then frisked the plaintiff and directed other officers to handcuff him although the frisk revealed no weapons. *Id.* The officer performed a warrant check before permitting the plaintiff to leave. *Id.* at 1087-89. The plaintiff sued for damages under § 1983, alleging the officer detained, frisked, and handcuffed him without reasonable suspicion or probable cause. *Id.*

In *Chestnut*, the plaintiff was significantly farther away from the police activity and did not disregard multiple police requests or orders to move back. Unlike here, there was no indication in *Chestnut* that a suspect had fled the scene and no testimony by the officers that they needed to perform a wider sweep for evidence. Perhaps most importantly, the plaintiff in *Chestnut* created a triable issue for the jury by controverting the defendant's material facts with respect to plaintiff's actions. As stated above, Plaintiff has not controverted Defendants' Statement of Uncontroverted Material Facts.

### 1. Defendant Linhorst

Upon his arrival to the scene, Plaintiff placed himself near the stolen vehicle and a police vehicle that contained a suspect. (ECF No. 93, Defs.' SUMF ¶ 10). Defendant Linhorst told Plaintiff to move back at least three times as he moved a police vehicle between Plaintiff and the vehicle that contained the suspect. (ECF No. 93-3, Defs.' Ex. C). Linhorst then exited the vehicle

and walked away from Plaintiff. *Id.* Linhorst later assisted Defendants Karnowski and Shaw with Plaintiff's arrest. (ECF No. 93-4, Defs.' Ex. D, Linhorst Dep. 34:20-22, 35:2-4).

Defendant Linhorst testified at his deposition that the officers "were trying to establish the crime scene, see if there was any other evidence[.]" (ECF No. 93-4, Defs.' Ex. D, Linhorst Dep. 26:16-17). Linhorst further testified that he was trying to create a "reactionary gap" and "didn't understand why [Plaintiff] had to be so close to us when he could clearly zoom in enough to get even closer than where he was standing[.]" *Id.* at 30:5-31:3.

Defendant Linhorst had at least arguable probable cause to arrest Plaintiff for a violation of St. Louis City Code § 15.10.010. Plaintiff was within 15 to 20 feet of the stolen vehicle and resisted Linhorst's directives to move back. (ECF No. 93-3, Defs.' Ex. C). Plaintiff then declined several requests from Linhorst's colleagues to move back. *Id.* A reasonable officer could conclude that Plaintiff was purposely or knowingly resisting and interfering with officers in the discharge of their official duties. Further, the evidence establishes that the Defendants had not yet examined the stolen vehicle or canvassed the area for evidence and Defendants testified Plaintiff hindered their ability to evaluate the crime scene for evidence. (ECF No. 93, Defs.' SUMF ¶ 57). This concern was reasonable based on Defendants' uncontroverted testimony that fleeing suspects often abandon evidence near the scene when fleeing. *Id.* at ¶ 58. Although Plaintiff argues that "there is controverted evidence as to whether the police were actively searching for evidence in the area or reasonably viewed Mr. Whitt as a threat[,]" Plaintiff failed to cite such evidence in the summary judgment record. Under the totality of the circumstances, a reasonable person could believe that Plaintiff was violating § 15.10.010. Defendant Linhorst is entitled to qualified immunity on Count I.

### 2. *Defendant Shaw*

After Plaintiff refused Defendant Linhorst's directives, Defendants Karnowski and Shaw approached Plaintiff. (ECF No. 93-3, Defs.' Ex. C). Defendant Shaw observed as his supervisor, Defendant Karnowski, instructed Plaintiff to move back at least five times. *Id.* Defendant Shaw informed Plaintiff that he was in the officers' workspace. *Id.* Defendant Shaw testified that officers had not yet secured the scene or canvassed the surrounding areas where a subject had fled. (ECF No. 93-1, Defs.' Ex. A, Shaw Dep. 29:8-17). After the Plaintiff refused several orders, Defendant Shaw assisted Defendant Karnowski with Plaintiff's arrest. *Id*.

Under the totality of the circumstances, a reasonable person could believe that Plaintiff was violating § 15.10.010. Plaintiff refused orders by Defendant Shaw and two other officers while standing in an area that potentially contained evidence of a crime. A reasonable officer could conclude that Plaintiff was purposely or knowingly resisting and interfering with officers in the discharge of their official duties. Defendants assert that Plaintiff hindered their ability to evaluate the crime scene for evidence. (ECF No. 93, Defs.' SUMF ¶ 57). Plaintiff has offered no evidence to refute Defendant Shaw's claim that officers had not yet secured the scene or canvassed the area. Defendant Shaw is entitled to qualified immunity on Count I.

### 3. *Defendant Karnowski*

Defendant Karnowski approached Plaintiff with Defendant Shaw after Plaintiff refused Defendant Linhorst's directives. (ECF No. 93-3, Defs.' Ex. C). Defendant Karnowski instructed Plaintiff to move back at least five times. *Id.* Defendant Karnowski asked Plaintiff to move back another 20 feet, specifying that "back by the light post would be really good." *Id.* Plaintiff refused the request and took only a few steps backward. *Id.* Defendants Karnowski and Shaw both informed Plaintiff that he was in their "workspace." *Id.* Defendant Karnowski warned Plaintiff that

he was "in danger of interfering right now." *Id.* Defendant Karnowski testified that Plaintiff "was hindering our investigation" and "drawing our attention away from our suspects, and then our investigation." (ECF No. 93-2, Defs.' Ex. B, Karnowski Dep. 52:9-12). Only after Plaintiff refused several demands to move back did Defendant Karnowski arrest Plaintiff with the assistance of Defendants Linhorst and Shaw. A reasonable person could believe that Plaintiff was violating § 15.10.010 when he refused several demands from three officers to move backl while standing within 15 to 20 feet of the stolen vehicle from which at least one suspect had fled. Defendant Karnowski is entitled to qualified immunity on Count I.

Defendants did not violate Plaintiff's constitutional right to be free from unlawful seizure or arrest. Accordingly, the Court need not address whether the right was clearly established at the time of the alleged deprivation. Defendants Linhorst, Shaw, and Karnowski are entitled to summary judgment on Count I.

### B. Malicious Prosecution (Count II)

In Count II, Plaintiff asserts a claim of malicious prosecution against Defendants Karnowski, Linhorst, and Shaw. Defendants argue that Plaintiff's claim of malicious prosecution is not cognizable under § 1983. Plaintiff does not address Defendants' argument in his reply.

In the Eighth Circuit, an allegation of malicious prosecution without more is not cognizable under § 1983. *Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013). Even so, "a § 1983 plaintiff's claim that he was arrested or prosecuted without probable cause, even if labeled a claim of malicious prosecution, 'must be judged' under the Fourth Amendment, not substantive due process. *Albright v. Oliver*, 510 U.S. 266, 270-71 & n.4 (1994) (plurality opinion joined by seven Justices on this issue)." *Steward v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016); *see also Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919 (2017) ("If the complaint is that a form of legal process

resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.")

Plaintiff's Amended Complaint states, in relevant part:

> To the extent that Defendants claim they believed that the arrest and prosecution of Whitt was supported by probable cause, Defendants' belief was objectively unreasonable because there was no evidence that Whitt "purposefully or knowingly" interfered with police officers. Indeed, any such account is belied by video evidence in the Defendants' possession, custody, or control at the time the charge was filed.

(ECF No. 38, ¶ 52). Based on this language, the Court concludes that Plaintiff's claim for malicious prosecution is at least partially based on his claim that he was arrested without probable cause, so it must be judged under the Fourth Amendment. *Albright*, 510 U.S. at 270-71. The Court has already found, however, that Defendants had at least arguable probable cause to arrest Plaintiff. Thus, to the extent Plaintiff's malicious prosecution claim is cognizable, Defendants are shielded by qualified immunity and entitled to summary judgment on Count II.

## C.     First Amendment Retaliation (Count III)

In Count III, Plaintiff alleges that Defendants Karnowski, Linhorst, and Shaw arrested him for filming public police activity. Defendants refute this basis for the arrest and claim they are entitled to qualified immunity.

To establish a claim for First Amendment retaliation, Plaintiff must show: (1) he engaged in a constitutionally protected activity; (2) the Defendants took adverse action against him that would chill a person of ordinary firmness from continuing the activity; and (3) a causal connection exists between the retaliatory animus and injury. *Quraishi v. St. Charles Cnty., Mo.* 986 F.3d 831, 837 (8th Cir. 2021) (citing *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010) (per curiam)). Under the third prong, Plaintiff must show that the retaliatory motive of Defendants was

a "substantial factor" or "but-for cause" of the arrest. *Hoyland v. McMenomy*, 869 F.3d 644, 657 (8th Cir. 2017) (citations omitted). Further, in retaliatory arrest cases, "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019); *see Johnson v. McCarver*, 942 F.3d 405, 409 (8th Cir. 2019) (citing *Nieves* for the proposition that an arrest generally does not violate the Fourth or First Amendments when it is supported by probable cause).

Defendants do not dispute that Plaintiff had a First Amendment right to film their activity. Defendants also do not dispute that they arrested Plaintiff. Thus, this Court need only consider whether a reasonable jury could find that Plaintiff's protected activity was the "but-for cause" or a "substantial factor" of the arrest and whether Defendants had at least arguable probable cause to make the arrest.

### 1. *Defendant Linhorst*

Defendant Linhorst told Plaintiff to move back at least three times. (ECF No. 93-3, Defs.' Ex. C). Defendant Linhorst's supervisor, Defendant Karnowski, subsequently told Plaintiff to move back at least five times. *Id.* Defendant Linhorst testified at his deposition that the officers "were trying to establish the crime scene, see if there was any other evidence[.]" (ECF No. 93-4, Defs.' Ex. D, Linhorst Dep. 26:16-17). Linhorst further testified that he was trying to create a "reactionary gap" and "didn't understand why [Plaintiff] had to be so close to us when he could clearly zoom in enough to get even closer than where he was standing[.]" *Id.* at 30:5-31:3.

First, and most importantly, Plaintiff's claim fails because he has not shown the absence of probable cause for the arrest. As discussed above, there was probable cause for Plaintiff's arrest for violating St. Louis City Code § 15.10.010. Second, Plaintiff has not shown that a retaliatory motive was a "substantial factor" or "but-for cause" for his arrest. Defendant Linhorst did not

interfere with Plaintiff's recording. He never told Plaintiff to stop filming or indicated in any way that Plaintiff could not record. What is more, Defendant Linhorst did not arrest the other individual who was also filming the police activity. There is insufficient evidence in the record for a reasonable jury to determine that Defendant Linhorst arrested Plaintiff because he was engaged in protected First Amendment activity. Defendant Linhorst is entitled to qualified immunity on Count III.

### 2. *Defendant Shaw*

Defendant Shaw told Plaintiff he was in the officers' "workspace." (ECF No. 93-3, Defs.' Ex. C). Defendant Shaw observed as his supervisor, Defendant Karnowski, told Plaintiff to back up at least five times. *Id.* Defendant Shaw testified that Plaintiff was in their workspace because the officers

> had just responded back to [the stolen vehicle], since we had all been spread out, we had not properly secured the scene yet, we had not . . . I don't even think we had searched the vehicle yet or the surrounding areas where those, where the subject had fled. It's still an unfolding scene, the, you know, typically on scenes like this weapons or contraband could be left behind, whether in the path of where the suspects fled or in the vehicle, itself.

(ECF No. 93-1, Defs.' Ex. A, Shaw Dep. 29:8-17). Defendant Shaw further testified that Plaintiff's repeated refusals to move back diverted the officers' attention from the crime scene to Plaintiff. *Id.* at 30:15-20. Defendant Shaw also noticed another civilian bystander that was "at a reasonable distance on the sidewalk." *Id.* at 36:2-3. Defendant Shaw did not arrest this individual or another individual who was filming nearby.

As with Defendant Linhorst, Defendant Shaw had probable cause to arrest Plaintiff for violating St. Louis City Code § 15.10.010 and Plaintiff has not shown that a retaliatory motive was a "substantial factor" or "but-for cause" for the arrest. There is insufficient evidence for a

reasonable jury to conclude that Defendant Shaw arrested Plaintiff because he was engaged in a First Amendment protected activity. Defendant Shaw is entitled to qualified immunity on Count III.

### 3. *Defendant Karnowski*

Defendant Karnowski instructed Plaintiff to move back at least five times. (ECF No. 93-3, Defs.' Ex. C). Defendant Karnowski stated "back by the light post would be really good." *Id.* Defendant Karnowski twice acknowledged Plaintiff's right to film. *Id.* Plaintiff refused Defendant Karnowski's requests and took only a few steps backward. *Id.* Defendant Karnowski informed Plaintiff that he was in the officers' "workspace." *Id.* Defendant Karnowski warned Plaintiff that he was "in danger of interfering right now." *Id.* Defendant Karnowski testified that Plaintiff "was hindering our investigation" and "drawing our attention away from our suspects, and then our investigation." (ECF No. 93-2, Defs.' Ex. B, Karnowski Dep. 52:9-12). Defendants' evidence shows that there were two other civilians at the scene, at least one of which was filming. Defendant Karnowski did not arrest these other individuals. There is insufficient evidence in the record that would allow a reasonable jury to conclude that Defendant Karnowski arrested Plaintiff because he was filming. And as with the other defendants, Defendant Karnowski had at least arguable probable cause to arrest Plaintiff for a violation of § 15.10.010. Defendant Karnowski is entitled to qualified immunity on Count III.

Because Defendants did not violate Plaintiff's constitutional rights, the Court need not address whether the right was clearly established at the time of the alleged deprivation. For these reasons, Defendants are entitled to summary judgment on Count III.

**D.     Unlawful Search against Defendant Linhorst (Count IV)**

In Count IV, Plaintiff asserts that Defendant Linhorst violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure. Specifically, Plaintiff argues that Defendant Linhorst improperly seized and searched Plaintiff's camcorder following the arrest in question. Defendant Linhorst moves for summary judgment on this claim based on qualified immunity.

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). But the fact that a neutral magistrate has issued a warrant does not end the inquiry into objective reasonableness. *Id.* at 547. An officer cannot be said to have acted in an objectively reasonable manner when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id.* (quoting *Malley*, 475 U.S. at 341). In other words, immunity is lost where the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 547 (quoting *Leon*, 468 U.S. at 923). The threshold for establishing this exception is high. *Id.* "The Fourth Amendment does not require probable cause to believe evidence will conclusively establish a fact before permitting a search, but only 'probable cause . . . to believe that the evidence sought will aid in a particular apprehension or conviction.'" *Messerschmidt*, 565 U.S. at 575 n.7 (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)).

The 8th Circuit said in 2017:

> As an initial matter, it is important to emphasize that the relevant
> inquiry in cases such as this is not whether a warrant application

was, in fact, sufficient to establish probable cause of criminal activity. Rather, when a search or seizure is conducted pursuant to a duly issued warrant, we must determine whether it was "entirely unreasonable" for an officer to believe that the warrant application established probable cause.

*Kiesling v. Holladay*, 859 F.3d 529, 534 (8th Cir. 2017) (citing *Messerschmidt*, 565 U.S. at 553, 556); *see also United States v. Hallam*, 407 F.3d 942, 946 (8th Cir. 2005) (holding that it was objectively reasonable for an officer to rely on the validity of a warrant where "the [officer's] affidavit, while scant, was not so utterly lacking in facts as to render [his] belief that it established probable cause 'entirely unreasonable.'").

It is undisputed that Defendant Linhorst drafted a warrant affidavit to search the contents of Plaintiff's camcorder that stated, in part:

> On August 8, 2016, I was in the 5000 block of Wells relative to an investigation involving a stolen vehicle. While on the scene, David Whitt interfered with our Tampering 1st investigation. While interfering, David Whitt was operating and filming, thus documenting, his interfering with the aforementioned video recording device he was in possession of. Based on information obtained throughout this investigation there is probable cause to believe that the above listed video camera contains evidence that David Whitt interfered with a police officer in the performance of their duty.

(ECF No. 93-8, Defs.' Ex. H, p. 1). A municipal judge signed the warrant on August 9, 2016. *Id.*

In his opposition, Plaintiff argues the search of his camcorder lacked probable cause because Defendant Linhorst could not have reasonably believed the allegations he made in the affidavit, so no reasonably competent officer would have concluded that a warrant should issue. Plaintiff contends that Defendant Linhorst knew that Plaintiff had not committed the offense of interfering with officers, as Defendants had no probable cause to believe Plaintiff had committed a crime. But the affidavit describes the probability that the evidence of Plaintiff's alleged interference with the Defendants' investigation could be found on the camcorder. The Court finds

that the affidavit sufficiently articulates probable cause for the search. As a result, Plaintiff does not establish an issue of fact as to whether it was "entirely unreasonable" for Linhorst to believe that the warrant application established probable cause. *See Kiesling*, 859 F.3d at 534.

Defendant Linhorst did not violate Plaintiff's Fourth Amendment right when he seized Plaintiff's camcorder incident to the arrest and later searched its contents under warrant. A judge signed the warrant and there is no evidence to suggest Defendant Linhorst's affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Thus, Defendant Linhorst is entitled to qualified immunity on this claim. Because Defendant Linhorst did not violate Plaintiff's constitutional right, the Court need not address whether the right was clearly established at the time of the alleged deprivation. For these reasons, Defendant Linhorst is entitled to summary judgment on Count IV.

### E.    False Arrest under Missouri Law (Count VI)

In Count VI, Plaintiff asserts a claim of false arrest under Missouri law against Defendants Linhorst, Shaw, and Karnowski. Defendants maintain that the arrest was proper and that they are entitled to official immunity.

Under Missouri law, a plaintiff has a cause of action for false arrest if the plaintiff is confined without legal justification. *Blue v. Harrah's N. Kansas City, LLC,* 170 S.W.3d 466, 472 (Mo. App. W.D. 2005) (citing *Rankin v. Venator Grp. Retail, Inc.*, 93 S.W.3d 814, 819 (Mo. App. E.D. 2002)). There are two elements to a claim of false arrest: (1) restraint of an individual against their will, and (2) the unlawfulness of that restraint. *Blue*, 170 S.W.3d at 472 (citing *Bramon v. U-Haul, Inc.*, 945 S.W.2d 676, 680 (Mo. App. E.D. 1997)).

Missouri has long applied the doctrine of official immunity. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008) (en banc). The doctrine exists to "protect[ ] public

employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Letterman v. Does*, 859 F.3d 1120, 1125 (8th Cir. 2017) (citing *Southers*, 263 S.W.3d at 610). The doctrine does not, however, provide immunity for torts committed when acting in a ministerial capacity. *Id.* (citation omitted). A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued. *Id.* (citation omitted). A ministerial function is one of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed. *Id.* at 1125-26 (citation and internal quotations omitted). Whether an act is discretionary or ministerial is made on a case-by-case basis and depends on: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Id.* (citation omitted). Even a discretionary act will not be protected by official immunity if the conduct is willfully wrong or done with malice or corruption. *Id.* (citation omitted). Because arresting someone is a discretionary act, the issue here is whether Defendants acted in bad faith or with malice. *Blue*, 170 S.W.3d at 480.

For the reasons explained above in Part A, each Defendant had at least arguable probable cause to believe Plaintiff was violating § 15.10.010. Thus, Plaintiff cannot show that his restraint was unlawful. Even if he could, Defendants are entitled to official immunity. Although Plaintiff alleges that Defendants acted in bad faith and with malice, Plaintiff offers no evidence to support such an allegation. Plaintiff's contention, therefore, is merely a legal conclusion. As a result, Defendants are entitled to official immunity and summary judgment on Count VI.

## Conclusion

As to the federal causes of action, Plaintiff has failed to show that the facts alleged, construed in the light most favorable to Plaintiff, demonstrate the violation of a constitutional right that was clearly established at the time of the violation. *See Church*, 898 F.3d at 832. The Defendants are therefore entitled to qualified immunity. As to the state law claim, Plaintiff has failed to show that Defendants acted with bad faith and malice in arresting him. Thus, Defendants are entitled to official immunity. For the reasons discussed above, Plaintiff has failed to substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than speculation or conjecture. *See Carter*, 956 F.3d at 1059. Thus, the Court will grant Defendants' Motion for Summary Judgment in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 91) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants John Does 1-3 are **DISMISSED**.

An appropriate Judgment will accompany this Memorandum and Order.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 6th day of July, 2021.