**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

DAVID WHITT,                                                    )
                                                               )
          Plaintiff,                                 )
                                                               )
      v.                                               )    Case No. 4:18-CV-1294
                                                               )
CITY OF ST. LOUIS, *et al.*                                    )
                                                               )
          Defendants.                                )

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR RELIEF FROM ORDER AND JUDGMENT**

COMES NOW Plaintiff David Whitt, for himself and by and through his undersigned counsel, and, pursuant to FED. R. CIV. P. 60(b), moves to set aside the Memorandum and Order granting Defendants' Motion for Summary Judgment and resulting Judgment (Doc. 105 and 106), and for leave to file a response to Defendants' statement of uncontroverted material facts out of time. In support of this motion, Plaintiff states as follows:

**Procedural Background**

Plaintiff David Whitt filed this lawsuit to redress violation of his civil rights after he was arrested for filming SLMPD activity in the City of St. Louis. On February 11, 2021, Defendants filed a motion for summary judgment on all remaining counts. Doc. 91-93, 95. Plaintiff filed a timely response brief in opposition to Defendants' motion on March 15, 2021. Doc. 101.

Although Plaintiff also prepared a response to Defendants' statement of uncontroverted material facts (an anticipated filing that also included his own statement of uncontroverted material facts), that document was not filed on March 15, due to a clerical mistake. It is attached hereto as **Exhibit A**, unedited since it was finalized on March 15. *See* Declaration of W. Patrick Mobley, attached hereto as **Exhibit B** ("Mobley Dec."), at ¶ 7.

Plaintiff's counsel with principal responsibility for the case, W. Patrick Mobley, was out of the office the week of July 6, 2021, when that filing error was discovered upon issuance of the Order and Judgment. Mobley Dec. at ¶¶ 5-6. At that time, his supervisor, undersigned counsel, brought the error to his attention. *Id*. Prior to that, Mr. Mobley believed he had filed the response to Defendants' statement of facts. *Id*. at ¶¶ 3-7.

Promptly upon learning of the error, undersigned counsel prepared this motion to set aside the Order and Judgment due to "mistake, inadvertence, surprise, or excusable neglect" FED. R. CIV. P. 60(b)(1) or, in the alternative, under FED. R. CIV. P. 60(b)(6), to "prevent the judgment from becoming a vehicle of injustice." *Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005) (quoting *IF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 755 (8th Cir. 1996)).

### Legal Standard

Federal Rule of Civil Procedure 60(b) sets forth six independent grounds on which a judgment may be set aside, including "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). The text of Rule 60(b), "which provides that certain 'neglect' will be 'excusable,' contemplates that the courts are 'permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness.'" *Feeney v. AT & E, Inc.*, 472 F.3d 560, 563 (8th Cir. 2006) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). As the Eighth Circuit further explained:

> Whether the movant had a good reason for delay is a key factor in the analysis, *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000), but even without a satisfactory explanation, relief may be required where other equitable considerations weigh strongly in favor of setting aside the default judgment.

*Feeney*, 472 F.3d at 563 (citing *Union Pacific R.R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 783 (8th Cir. 2001)).

2

"Rule 60(b) is a motion grounded in equity and exists 'to prevent the judgment from becoming a vehicle of injustice.'" *Harley*, 413 F.3d at 870 (quoting *IF Realty L.P.*, 92 F.3d at 755). "The rule attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." 11 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2851, at 227 (2d ed.1995).

District courts enjoy wide discretion in ruling on a Rule 60(b) motion. *Jones v. Swanson*, 512 F.3d 1045, 1049 (8th Cir. 2008); *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, No. 4:12-CV-2164-RLW, 2016 WL 11164148, at *1 (E.D. Mo. Feb. 18, 2016). In evaluating a motion under Rule 60(b), courts typically consider "the danger of prejudice to [the non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395.

### Argument

Here, the balancing of the equities weighs in favor of setting aside the Order and Judgment. There are facts in the record that have not yet been presented to the Court due to counsel's clerical error. Had those facts been properly submitted, they would have demonstrated that one or more material questions remains for the jury to decide.

*First*, Plaintiff's delay is minimal. Although Plaintiff's response to the motion was filed on March 15, Plaintiff filed this motion only one day after his undersigned counsel learned of the prior omitted filing. *Second*, setting aside the Order and Judgment and permitting Plaintiff to file his response to Defendants' statement of facts out of time will not have a negative impact these proceedings or cause undue delay in the fair and just resolution of this case. At the City's request, the July 2021 trial date was continued; thus, there are no pending pre-trial deadlines. Defendants

may still have the opportunity to file a reply brief addressing Plaintiff's response to their statement of facts (and Plaintiff's additional uncontroverted facts). But the entire motion need not be fully briefed again. The Court is already familiar with the legal issues and the Defendants' facts.

*Third*, the reason for the delay was mere clerical oversight and excusable mistake; it was not an act of bad faith. Plaintiff did not intend to avoid his obligations. Indeed, his memorandum in opposition to Defendants' motion for summary judgment included citations to Plaintiff's statement of facts—well-supported facts which were intended to be filed in the same document responding to Defendants' facts. That document and its supporting exhibits were finalized and prepared for filing. The failure to file the document was a clerical mistake—nothing more.

*Fourth*, Plaintiff's response to Defendants' statement of facts, if properly considered by this court, would have demonstrated that there remain questions of material fact that a jury must decide. The determination of whether "excusable neglect" warrants setting aside the Order and Judgment boils down to an equitable one. *Pioneer*, 507 U.S. at 395. It would be inequitable to allow summary judgment to stand in Defendants' favor where Plaintiff's counsel had prepared but inadvertently not filed a response to Defendants' statement of facts. Denying this motion would cause Mr. Whitt's entire lawsuit to be terminated due to the oversight of his counsel, through no fault of his own. *United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982) ("[J]ustice…demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings."). That is especially true where, as here, material facts remain in dispute.

For example, the Court relies heavily upon testimony from the defendant officers that "fleeing suspects often abandon evidence near the scene when fleeing" (Order at 13) and that the police were actively searching for evidence in the area at the time Mr. Whitt approached them

4

(Order at 4, 13). But these facts are contested. *See* Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts ("Pl.'s Resp. to SUMF"), Exh. A, at ¶¶ 8-9. Officer Linhorst in fact testified that he and the other officers were trying to "see if there was any *other* evidence." Linhorst Depo at 26:13-21 (emphasis added). Linhorst's implication that the search was ongoing and that some evidence had already been found shows that the officers had had at least some time to search the area. The actions of SLMPD officers on the scene, visible in Mr. Whitt's video, also belie the assertion that police had not yet had the opportunity to search the area. Although Defendant Karnowski testified that Mr. Whitt was in their "workspace," and distracting them from an investigation (Order at 19), none of the multiple officers shown in the Incident Video are searching the scene. Police had not taped off the scene when Mr. Whitt arrived. Plaintiff's Statement of Uncontroverted Material Facts in Support of Opposition to Defendants' Motion for Summary Judgment ("Pl.'s SUMF"), Exh. A, at ¶ 8. Plaintiff's expert witness summarized it thusly: "There was no indication by video that anybody was looking for or searching for evidence." Pusins Depo at 63:7-9; Pl.'s Resp. to SUMF at ¶ 8; Pl.'s SUMF at ¶ 11. And he testified that, in his expert opinion, neither Mr. Whitt's proximity to the officers nor his alleged arguing with them hindered their investigation. Pl.'s Resp. to SUMF at ¶ 40.

The Court's decision turned on whether David Whitt was positioned in such a way as to interfere with an ongoing police investigation. On the Defendants' version Mr. Whitt was interfering. But with the full record, it is apparent that Mr. Whitt's location and whether his filming constituted interference with the police are disputed questions of fact—that, in the interest of justice, should be presented to a jury. For example, Defendants assert Mr. Whitt first came to a stop within 15-20 feet of the stolen vehicle, and within 10 feet of the nearest possible police vehicle. Defs.' SUMF at ¶ 10; Order at 5. Plaintiff's expert testified that, based on his review of

the video footage and knowledge regarding the size of police vehicles, Mr. Whitt was approximately 25 feet from the allegedly stolen vehicle and also approximately 25 feet from the officers when he first stopped and turned around. Pl.'s Resp. to SUMF at ¶ 10. Defendants also claimed that defendant Karnowski told Mr. Whitt to back up to a light post that was 10-15 feet behind Plaintiff. Defs.' SUMF at ¶ 30; Order at 6. But no witness testified that the light post was 10-15 feet behind Mr. Whitt. Pl.'s Resp. to SUMF at ¶ 30. Officer Shaw testified that he was not certain how far the light post was behind Mr. Whitt, but he estimated it was "maybe another 15-20 feet behind [Mr. Whitt]. Shaw Depo at 30:13-16. Karnowski testified that it was "[a]bout another 15 feet" away from Mr. Whitt. Karnowski Depo at 52:24-53:1. The Court also did not have the opportunity to consider Mr. Whitt's testimony that he deliberately positioned himself far enough away from the scene not to interfere. Pl.'s SUMF at ¶ 10.

These discrepancies in distance matter because the Court distinguished a controlling precedent, *Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020), in part because the plaintiff in that case was standing approximately 30-40 feet away from the traffic stop—a distance the Court characterized as "significantly farther away from the police activity." Order at 11. But if Mr. Whitt were initially 25 feet away from the police activity, and then backed up even further, a jury could reasonably conclude that, just like the plaintiff in *Chestnut*, Mr. Whitt was at least 30 feet away from the police activity and thus not interfering with police activity.

Likewise, there is a question of fact as to whether the defendant officers reasonably believed David Whitt posed a threat to them or their purported investigation. Although defendant Linhorst testified about the need to create a "reactionary gap," Defs.' SUMF at ¶ 12, Plaintiff's expert affirmatively testified that David Whitt posted no threat to the officers, Pl.'s Resp. to SUMF at ¶ 12; see also Pl.'s SUMF at ¶ 28 (Plaintiff's expert testified "I don't think there was any

6

evidence that [Mr. Whitt] created a danger to the officers …." Pusins Depo at 85:24-86:5.). And although the Court has not yet had a chance to consider this portion of his testimony, Linhorst admitted that Mr. Whitt took no aggressive action toward the officers. Pl.'s Resp. to SUMF at ¶ 20. Defendants' claim that this purported security threat formed the basis for Mr. Whitt's arrest, and not retaliation for Mr. Whitt's filming of police activity, is further called into question by the following facts which Plaintiff intended to present to the Court in response to Defendants' uncontroverted material facts:

- Defendant Linhorst had at least one prior interaction with David Whitt: Mr. Whitt testified that Linhorst had "threatened to take [his] camera before," and that Linhorst is "not really too cool on people filming the scene and stuff." Whitt Depo at 91:14-22. He also testified that there had been "another cop stop where [Linhorst] threatened to arrest [Whitt] if [Whitt] didn't back up." Id. at 108:13-18. Pl.'s Resp. to SUMF at ¶ 7. This contradicts Defendants' claim that the defendants were not familiar with David Whitt or his involvement in WeCopWatch. *See* Order at 4; Defs.' SUMF at ¶ 7.

- Although Defendants claim another person (Jacob Crawford) was filming police activity that day but not arrested (see, e.g., Order at 7, 18), there is no evidence that Mr. Crawford was also recording police activity near the scene. Indeed, Mr. Crawford did not arrive at the scene until Mr. Whitt had already been taken into custody. Pl.'s Resp. to SUMF at ¶ 44.

- While he was recording from the sidewalk, an officer placed a police vehicle in such a way that it obstructed Mr. Whitt's view of the scene. Pl.'s SUMF at ¶ 12.

- Mr. Whitt repeatedly complied with the defendant officers' commands to back up; yet they continued to tell him to back up even further. Mr. Whitt viewed this as harassment. Pl.'s SUMF at ¶¶ 13-14.

All of these facts call into question Defendants' motive for arresting David Whitt. Yet none of these facts—all of them contained within Exhibit A—were before the Court when it ruled on Defendants' motion for summary judgment. Had these facts been included in the record, the Court could have found that questions of material fact warrant a jury trial in this case.

Plaintiff's counsel acknowledge our clerical error and apologize to the Court and to opposing counsel. But we ask that the Court exercise its discretion under Rule 60(b) to set aside

the Order and Judgment. Permitting the Order and Judgment to stand in the face of these material and contested facts would be inequitable and unjust—to Mr. Whitt who is personally blameless in this connection. Thus, even if the Court does not find grounds to set aside the Order and Judgment under Rule 60(b)(1), the Order and Judgment should still be set aside pursuant to Rule 60(b)(6).

## Conclusion

WHEREFORE, to prevent the Order and Judgment from becoming a "vehicle of injustice," Plaintiff respectfully requests that this Court set aside the July 6, 2021 Order and Judgment, permit Plaintiff to file his response to Defendants' statement of uncontroverted material facts out of time, and grant such other relief as is just and appropriate under the circumstances.

Dated: July 7, 2021

Respectfully submitted,

RODERICK AND SOLANGE
MACARTHUR JUSTICE CENTER

By: /s/ Amy E. Breihan
Amy E. Breihan, #65499MO
Megan G. Crane, #71624MO
W. Patrick Mobley, #63636MO
3115 South Grand Blvd., Suite 300
St. Louis, MO 63118
Phone: (314) 254-8540
Fax: (314) 254-8547
amy.breihan@macarthurjustice.org
megan.crane@macarthurjustice.org
pat.mobley@macarthurjustice.org

*Attorneys for Plaintiff David Whitt*